Wilhelmina MOORE, Appellant,

v.

The STATE of Texas, Appellee.

No. 68496.

Court of Criminal Appeals of Texas, En Banc.

June 15, 1983.

Carolyn F. Moore (court appointed), Lubbock, for appellant.

John T. Montford, Dist. Atty. and Jim B. Darnell, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

This is an appeal from a conviction for aggravated robbery; the punishment, which is enhanced by two prior felony convictions, is imprisonment for life.

In the third ground of error the appellant asserts that damaging hearsay testimony was admitted over her timely objection. The State argues that: "The testimony in question directly refuted the testimony of two of the appellant's witnesses. The State respectfully contends that this testimony was admissible because it had the indicia of reliability that takes hearsay out of the general rule of exclusion, and allows its admission as competent evidence ... be-

---

1. V.T.C.A., Penal Code, § 30.02(b) defines "entry" as "to intrude (1) any part of the body; or (2) any physical object connected with the body."

cause the declarants were present at trial, testified under oath, subject to cross-examination, and were available for the jury to assess their demeanor and credibility."

Even though neither the appellant nor the State fully develop the matter in their arguments, the matter presented is the propriety of the impeachment of two defense witnesses by showing they had made prior inconsistent statements. A summary of the evidence is necessary.

Although the 71 year old complainant testified he knew by sight the woman who robbed him, there was a vigorously contested issue concerning the identity of the woman who had robbed him. The complainant testified that in the late afternoon the day he was robbed, the appellant came to the door of his one room apartment, asked, and was allowed to enter to use the telephone. After gaining admittance she took a pistol from her purse, beat the complainant into unconsciousness, took approximately $400 from his pocket, a pistol from a drawer, and escaped.

The manager of the apartment, known as "Cowboy," heard a commotion. While going to the complainant's apartment, he saw a woman wearing a dark wig run into the Employment Office down the street. He had met the appellant before, but he didn't identify her as the woman he saw running down the street because he didn't see her face.

An investigating officer, who came to the scene soon after the robbery, saw the appellant in a taxi near the Employment Office and asked her for her identification, but he did not arrest her, because he was not sure that she met the description he had been given of the robber.

The appellant called as a witness Isabelita Morales, who lived in an apartment near the complainant. She knew the complainant, the appellant, "Cowboy," and a friend of the complainant who also lived in the apartment named Carolyn Cyphers. Morales testified that on the afternoon of the robbery she heard a car door slam; she observed through her apartment window the complainant "hugged up with this lady ... and they were kissing." The woman had long hair that reached "about to her bra strap." The witness did not see the woman's face, but she saw her enter the complainant's apartment with him. The witness had seen the appellant with a woman named Eula Lewis, who was dead at the time of the trial, but who had looked much like the appellant and the woman she saw enter the apartment. After seeing the woman and the complainant enter his apartment the witness left her apartment for a period of time, and when she returned the police and an ambulance were outside of the apartment. The witness's husband who had come home told her the complainant had been robbed.

Morales also testified the complainant had attempted to get her to change her testimony. About a week after the complainant returned home from the hospital, where he had been for several days after the robbery, she saw him getting in his car and she asked him how he was feeling. "And I asked him did they ever catch the woman. And he said yes. I said, 'Do you know her?' And he said, 'Her name is Wilhelmina Moore.' And he said, 'She just came, knocked on my door and asked me to use the phone and robbed me.' I said, 'Huh-uh' (indicating no). I said, 'I seen her getting out of the car with you.' I said, 'You all was kissing,' you know, like that. And he said, 'You are not supposed to say that; if they ask you, you are not supposed to say that in Court, darling.' "

The appellant also called Edwin York as a witness; he was then in the county jail, but he had lived in an apartment near the complainant and was acquainted with both the complainant and the appellant. He had seen a woman run from complainant's apartment to the Employment Office on the afternoon of the robbery. He testified that several days after the robbery he had gone to the complainant's apartment to use the telephone. He was at that time paid $25 by the complainant to say that it was the appellant whom he saw running from the scene of the robbery. He also testified that he knew Eula Lewis who was now

dead, but who "sort of did" look like the appellant.

In rebuttal the State called Carolyn Cyphers. Carolyn Cyphers lived in a nearby apartment and she cleaned and took care of the complainant's apartment for him almost daily. She also knew the witnesses Isabelita Morales and Edwin York, and she had talked with Isabelita Morales about this case. She was asked what Morales had told her, and a timely objection that it called for hearsay was overruled. Cyphers was allowed to testify that Morales had told her that it was the appellant who got out of the car and was kissing the complainant on the afternoon before the robbery occurred. Cyphers also testified she was in Morales's house when she (Cyphers) received a telephone call from Edwin York who was in jail. She was asked what York told her the appellant had told him regarding this case, and a timely objection that it called for hearsay was overruled. Cyphers testified that York told her the appellant had called him wanting him to testify for her, but he had told appellant he had enough problems trying to get himself out of trouble. Cyphers also testified that Eula Lewis, whom she also knew, didn't look anything like the appellant.

The appellant's objections that Cyphers's testimony was hearsay were good objections when made and should have been sustained. Cyphers's hearsay testimony would have been admissible to impeach Morales and York except for the fact that a proper predicate had not been laid to make the inconsistent hearsay statements admissible.

■ Before a witness may be impeached by evidence of a prior inconsistent statement, it is necessary to lay a proper predicate. 1 Branch's Annotated Penal Code, 2d ed., Section 201, page 221; 1 R. Ray, Texas Law of Evidence, Section 692 (Texas Practice 3d ed. 1980).

"This consists in asking the witness, on his cross-examination, whether he made the alleged contradictory statement. The witness is thus warned that the statement will later be used against him. He is given an opportunity to deny it and

prepare to disprove it, or if he admits making it, to explain the statement. This rule is recognized in almost all jurisdictions.... The Texas Courts have made no distinction between oral and written statements in this regard." P. 633.

For statements of the rule and application see *Haynes v. State,* 627 S.W.2d 710 (Tex.Cr.App.1982); *Thrash v. State,* 500 S.W.2d 834 (Tex.Cr.App.1973); *McWilliams v. State,* 496 S.W.2d 630 (Tex.Cr.App.1973); *Huffman v. State,* 479 S.W.2d 62 (Tex.Cr. App.1972); *Wilkinson v. Moore,* 623 S.W.2d 662 (Tex.App.—Houston [1st] 1981).

■ In this instance there was no attempt made to lay a foundation for impeaching Morales and York; therefore, the objection that Cyphers's testimony was hearsay should have been sustained. The summary of the testimony shows that the issues on which the witnesses were impeached were material and relevant and, therefore, were damaging to appellant's defense. The error is reversible error.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.