**Cameron Todd WILLINGHAM, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 71544.

Court of Criminal Appeals of Texas, En Banc.

March 22, 1995.

David Martin, Greg White, Waco, for appellant.

Patrick C. Batchelor, Dist. Atty., Corsicana, Jim Vollers, Austin, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

WHITE, Judge.

Appellant Cameron Todd Willingham was convicted on August 21, 1992 of capital murder by murdering more than one person during the same criminal transaction. Tex. Penal Code Ann. § 19.03(a)(6)(A). Two special issues were submitted to the jury under Tex.Code Crim. Proc. Ann. art. 37.071 § 2(b)(1) and § 2(e), and following the jury's verdict of guilty, the trial court sentenced appellant to death. Direct appeal to this Court is automatic. Tex.Code Crim.Proc. Ann. art. 37.071 § 2(h). We will affirm.

Appellant brings four points of error for this Court to review. In point of error number one, appellant contends the trial court erred in refusing to grant his Motion for Change of Venue, in light of inflammatory statements made by the Navarro County District Attorney. Appellant asserts in his second point of error that the trial court erred in refusing to admit evidence offered by the defense to impeach the testimony of a witness for the State. In his third point of error, appellant maintains the trial court erred in its charge to the jury during the punishment phase of the trial by failing to instruct the jury on the effect of parole, as parole would qualify as a "mitigating circumstance" under the facts of this case. Appellant contends, in point of error number four, that the evidence is insufficient to support the jury's answers to the special issues submitted in the punishment phase of the trial, particularly: (a) that the evidence is insufficient to support the finding that appellant is a continuing threat to society, and (b) that the evidence is insufficient to support a finding that mitigating circumstances would not warrant a life sentence. Appellant does not challenge the sufficiency of the evidence to support his conviction; therefore, the facts of the offense will be discussed only in reference to the error alleged in point of error number four.

Appellant contends in his fourth point of error that the evidence is insufficient to support the jury's answers to the special issues submitted in the punishment phase of the trial. Although appellant does not argue that the evidence was insufficient to support his conviction for capital murder, a review of the facts and other evidence underlying his conviction is necessary, as this is the information which the jury considered when answering the special issues in the punishment phase of the trial. *James v. State,* 772 S.W.2d 84, 88 (Tex.Cr.App.1989), 493 U.S. 885, 110 S.Ct. 225, 107 L.Ed.2d 178 (vacated and remanded on other issue); *James v. State,* 805 S.W.2d 415 (Tex.Cr.App.1990) (on remand); *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991).

The evidence adduced at trial was that on December 23, 1991, appellant poured a combustible liquid on the floor throughout his home and intentionally set the house on fire, resulting in the death of his three children. Amber, age two, and twins Karmon and Kameron, age 1, died of acute carbon monoxide poisoning as a result of smoke inhalation, according to autopsy reports. Neighbors of appellant testified that as the house began smouldering, appellant was "crouched down" in the front yard, and despite the neighbors' pleas, refused to go into the house in any attempt to rescue the children. An expert witness for the State testified that the floors, front threshold, and front concrete porch were burned, which only occurs when an accelerant has been used to purposely burn these areas. This witness further testified that this igniting of the floors and thresholds is typically employed to impede firemen in their rescue attempts.

The testimony at trial demonstrates that appellant neither showed remorse for his actions nor grieved the loss of his three children. Appellant's neighbors testified that when the fire "blew out" the windows, appellant "hollered about his car" and ran to move it away from the fire to avoid its being damaged. A fire fighter also testified that appellant was upset that his dart board was burned. One of appellant's neighbors testified that the morning following the house

fire, Christmas Eve, appellant and his wife were at the burned house going through the debris while playing music and laughing.

At the punishment phase of trial, testimony was presented that appellant has a history of violence. He has been convicted of numerous felonies and misdemeanors, both as an adult and as a juvenile, and attempts at various forms of rehabilitation have proven unsuccessful.[1]

The jury also heard evidence of appellant's character. Witnesses testified that appellant was verbally and physically abusive toward his family, and that at one time he beat his pregnant wife in an effort to cause a miscarriage. A friend of appellant's testified that appellant once bragged about brutally killing a dog. In fact, appellant openly admitted to a fellow inmate that he purposely started this fire to conceal evidence that the children had recently been abused.

Dr. James Grigson testified for the State at punishment. According to his testimony, appellant fits the profile of an extremely severe sociopath whose conduct becomes more violent over time, and who lacks a conscience as to his behavior. Grigson explained that a person with this degree of sociopathy commonly has no regard for other people's property or for other human beings. He expressed his opinion that an individual demonstrating this type of behavior can not be rehabilitated in any manner, and that such a person certainly poses a continuing threat to society.

 Appellant first contends the evidence is insufficient to support the jury's finding that he is a continuing threat to society. In determining whether evidence is sufficient to support a jury's answer to this special issue presented in the punishment phase of a capital murder trial, this Court views the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the elements of Tex.Code Crim.Proc.Ann. art. 37.071 § 2(b)(1) beyond a reasonable doubt.[2] *Rivera v. State,* 808 S.W.2d 80, 94 (Tex.Cr.App. 1991), *cert. denied,* 502 U.S. 902, 112 S.Ct. 279, 116 L.Ed.2d 231 (1991); *Hathorn v. State,* 848 S.W.2d 101, 115 (Tex.Cr.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3062, 125 L.Ed.2d 744 (1993); *Willis v. State,* 785 S.W.2d 378, 386 (Tex.Cr.App.1990), *cert. denied,* 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 234 (1990). Any evidence adduced

---

1. Maria Tassie Malowney, an Assistant District Attorney for Carter County, Oklahoma, listed the felonies and misdemeanors with which appellant has been charged and/or convicted. She explained that the synopsis of the juvenile offenses cannot be released, but that appellant has been involved in criminal activity since he was fifteen or sixteen years of age. Malowney testified that the felonies of which appellant was **convicted** are as follows:

 1) May 1986: Second Degree Burglary
 Punishment: probation, placed in a Nonviolent Intermediate Offender Act
 2) April 1987: Grand Larceny
 Punishment: two years probation and 60 days in the county jail
 Additionally, misdemeanors for which appellant was **convicted** are as follows:
 1) April 1986: Carrying a Concealed Weapon and Public Intoxication
 Punishment: 4 days in the county jail and ordered to pay fine and costs
 2) May 1986: Entering a Building with Unlawful Intent and Contributing to the Delinquency of a Minor (supplying paint for sniffing to a twelve-year-old child)
 Punishment: ordered to pay restitution, 15 days in the county jail and six months probation, running concurrently

 3) November 1986: Two counts of Contributing to the Delinquency of a Minor (supplying paint to a twelve-year-old child and an eleven-year-old child)
 Punishment: 60 days in the county jail
 4) November 1988: Driving Under the Influence of Liquor and/or Drugs (substance was paint)
 Punishment: One year probation on the condition he check himself into an in-patient rehabilitation program for paint abuse.
 5) February 1989: Shoplifting
 Punishment: Probation orders from April 1987 Grand Larceny conviction and November 1988 DUI conviction vacated, sent to a special boot camp program, then given a two year sentence with all but 74 days suspended on the condition he 1) complete a substance abuse treatment program, 2) attend at least one AA or NA meeting per week, and 3) take part in a urinalysis every week and a half.

2. Article 37.071 § 2(b)(1) provides that:
 On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:
 (1) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

at the guilt/innocence and punishment phases of trial can be used by the jury when considering future dangerousness. *Willis v. State,* 785 S.W.2d at 386; *Valdez v. State,* 776 S.W.2d 162, 166–67 (Tex.Cr.App.1989), *cert. denied,* 495 U.S. 963, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990); *Mitchell v. State,* 650 S.W.2d 801, 812 (Tex.Cr.App.1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984). Often, the circumstances of the offense alone are enough to sustain an affirmative answer to this special issue. *Willis* at 386; *Sosa v. State,* 769 S.W.2d 909, 912 (Tex.Cr.App.1989); *Moreno v. State,* 721 S.W.2d 295, 302 (Tex.Cr.App. 1986). A defendant's prior criminal record is also relevant to future dangerousness. *Willis* at 387; *Valdez v. State,* 776 S.W.2d at 167; *Keeton v. State,* 724 S.W.2d 58, 61 (Tex.Cr. App.1987).

The facts of the offense are heinous and exhibit complete disregard for human life. Appellant saturated his house with a combustible liquid, ignited the house, and left his three children in the burning house. We believe a rational trier of fact could have answered "yes" to the second special issue based solely on the circumstances of the offense. *Willis* at 386; *Sosa v. State,* 769 S.W.2d at 912; *Moreno v. State,* 721 S.W.2d at 302.

■ Criminal history and reputation evidence are also probative of future dangerousness. *Willis* at 387; *Valdez* at 167; *Keeton v. State,* 724 S.W.2d at 61; *James v. State,* 772 S.W.2d at 90. The fact that appellant has been convicted of numerous offenses and has failed all attempts of rehabilitation, as well as having committed other violent acts apart from his criminal convictions, are relevant considerations the jury could have used to find that appellant would present a continuing threat to society.

Having reviewed all the evidence in the light most favorable to the verdict, including trial evidence, circumstances of the offense, and appellant's extensive criminal history, we find sufficient evidence in the record for a rational trier of fact to have concluded beyond a reasonable doubt that there was a probability that appellant would commit

criminal acts of violence that would constitute a continuing threat to society.

■ Appellant also contends in point of error four that the evidence is insufficient to support a finding that mitigating circumstances would not warrant a life sentence. *See* Tex.Code Crim.Proc.Ann. art. 37.071 § 2(e). Appellant fails to point to any mitigating factors which would persuade a jury to answer this special issue in his favor and render a life sentence. Likewise, no mitigating circumstances are apparent from a thorough reading of the record. No authorities are cited and no argument is made under this point of error; therefore, nothing is presented for review on this point. Tex.R.App. Proc. 74(f); *Woods v. State,* 569 S.W.2d 901, 905 (Tex.Cr.App.1978), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981); *Byrom v. State,* 528 S.W.2d 224, 226 (Tex.Cr. App.1975). Accordingly, appellant's fourth point of error is overruled.

■ Appellant maintains in point of error number one that the trial court abused its discretion in refusing to grant appellant's motion for change of venue. Appellant argues that, especially in light of inflammatory statements made by the Navarro County District Attorney, he could not receive a fair trial.

The trial court conducted a hearing on the motion to change venue on August 3, 1992. Testifying for appellant were Stacy Willingham, appellant's wife; and Tracy and Ronnie Kuykendall, Stacy Willingham's brothers. These witnesses testified that it was their opinion that appellant could not receive a fair trial in Navarro County due to the media coverage, which included a televised statement made by the district attorney. Appellant introduced into evidence various newspaper articles pertaining to the events of the fire. Also introduced was a video tape of the criminal district attorney, in which he commented that the possible motive for appellant's commission of this offense was that "the children were interfering with [appellant's] beer drinking and dart throwing."

The State then offered the testimony of three witnesses: J.D. Kuykendall, appellant's father-in-law; Mildred Kuykendall, appel-

lant's mother-in-law; and Jim Gill, an attorney from Corsicana. These witnesses testified that they believed the affiants supporting the Motion to Change Venue were not credible due to their lack of knowledge to support their statements. They further testified that appellant's witnesses possessed special knowledge of the defendant, as a result of their relationship with the defendant, which rendered their testimony less than credible. These witnesses also testified that they believed appellant could obtain a fair and impartial trial in Navarro County.

The trial court denied appellant's motion for a change of venue, but the judge stated, "... with reference to the Change of Venue: I realize that it may crop back up, you know, sometime [sic] down the road; and if it does, we will handle it as it comes up." Neither during nor following voir dire of the jury panel did Appellant reurge his motion to change venue.

A change of venue is proper and consistent with principles of due process when a defendant demonstrates his inability to obtain an impartial jury or a fair trial at the place of venue. *Groppi v. Wisconsin,* 400 U.S. 505, 510–11, 91 S.Ct. 490, 493, 27 L.Ed.2d 571 (1971); *Hathorn v. State,* 848 S.W.2d at 109; *see Henley v. State,* 576 S.W.2d 66, 69 (Tex.Cr.App.1978). A change of venue is the remedy to jury prejudice resulting from extensive, widespread inflammatory news coverage. *Beets v. State,* 767 S.W.2d 711 (Tex.Cr.App.1987), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989); *Henley v. State,* 576 S.W.2d at 71.

The mere fact that a crime was publicized in the news media does not establish prejudice or require a change of venue per se. *Hathorn* at 109; *Beets v. State,* 767 S.W.2d at 743; *see Johnson v. Texas,* 773 S.W.2d 322, 324 (Tex.Cr.App.1989), *aff'd on other grounds,* —— U.S. ——, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). Rather, the test is "whether outside influences affecting the

community's climate of opinion as to a defendant are inherently suspect." *Hathorn* at 109; *Beets,* 767 S.W.2d at 742; *Henley,* 576 S.W.2d at 72. In order to prevail in a motion to change venue, a defendant must prove that publicity about the case is pervasive, prejudicial and inflammatory. A defendant must demonstrate an "actual, identifiable prejudice attributable to pretrial publicity on the part of the community from which members of the jury will come." *DeBlanc v. State,* 799 S.W.2d 701, 704 (Tex.Cr.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); *Beets* at 743; *Faulder v. State,* 745 S.W.2d 327, 338 (Tex. Cr.App.1987).

When a trial court is presented with a motion to change venue, the trial judge must act as fact-finder with regard to the issue presented. Tex.Code Crim.Proc. Ann. Art 31.04; *see Cook v. State,* 667 S.W.2d 520, 522 (Tex.Cr.App.1984). The trial judge is in a better position than this Court to resolve such issues as a result of his ability to observe the demeanor of witnesses and scrutinize their veracity. Consequently, we will affirm the trial court's judgment absent evidence of an abuse of discretion. *Hathorn* at 109; *Aranda v. State,* 736 S.W.2d 702, 705 (Tex.Cr.App.1987), *cert. denied,* 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988); *Freeman v. State,* 556 S.W.2d 287, 297 (Tex. Cr.App.1977), *cert. denied,* 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1978).

The newspaper articles offered by appellant demonstrated nothing more than accurate reporting of a newsworthy occurrence in Navarro County. *See Johnson v. State,* 773 S.W.2d at 325. Although the statement made by the district attorney was televised, the record does not demonstrate that either the newspaper or television reporting was widespread. Nothing in the record indicates an identifiable prejudice existed in the community, nor does it show that the community climate of opinion was inherently suspect.[3]

3. Of the twelve jurors selected, four (4) remembered reading "something" in the newspapers; three (3) had not heard anything or read anything about the case; two (2) reported that they had vaguely heard talk about the case; one (1) recalled hearing "the basics" of the case on

television; one (1) remembered reading about the fire in the paper and knew that the fire was set; and one (1) believed she had heard what everyone in Corsicana had heard.

Furthermore, all of these jurors testified that they could set aside anything they had heard

Appellant has failed to prove that these articles and televised statement amounted to pervasive, prejudicial, or inflammatory publicity. After reviewing the record, we conclude that the trial court did not abuse its discretion in overruling appellant's motion for change of venue and proceeding with the trial in Navarro County. Appellant's first point of error is overruled.

In his second point of error, appellant argues that the trial court erred in refusing to admit evidence offered by the defense to impeach the testimony of a witness for the State. Johnny Webb, a State's witness, testified that appellant confessed to him that he committed the offense; that appellant explained in detail how he poured lighter fluid throughout the house, purposely burned one of the children, set the house on fire, fled, and refused to go back into the house to rescue the children.

During appellant's cross-examination of Webb, no inquiry was made concerning Webb's alleged interest in the case, and Webb was not afforded an opportunity to explain or deny the significance of any such circumstances. Appellant then offered the testimony of James McNally for the purpose of impeaching the State's witness Webb. The Court sustained the State's objection to this testimony. In a bill of exceptions, defense witness McNally testified that Webb had at one time stated he had been threatened by prison deputies, and that "he was hoping to get out—get time cut or something was supposed to happen with his lawyer in a couple of months." When asked whether Webb was threatened in connection with obtaining a statement on the case at bar, no clear answer was given. Appellant urged that this testimony was admissible to show motive of the State's witness to perjure himself. The State reurged its objection and the trial court sustained the objection.

Impeachment of a witness means adducing proof that such witness is unworthy of belief or credit. *Ransom v. State,* 789 S.W.2d 572, 587 (Tex.Cr.App.1989); *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990); *Jackson v. State,* 516 S.W.2d 167, 175 (Tex.Cr.App.1974). The credibility of a witness may be attacked, inter alia, by evidence that the witness is slanting his testimony against or in favor of a party as a result of personal interest or bias in the cause. Tex.R.Crim. Evid. 612(b).

What first must be established is a specific connection between the witness' testimony and the cause, disclosing an actual bias or motive, *see London v. State,* 739 S.W.2d 842, 846 (Tex.Cr.App.1987), and this nexus must be demonstrated by laying the proper foundation. To lay a proper predicate for impeachment the witness should be asked about any possible interest or bias he may have before there is an attempt to prove interest or bias otherwise. *See Green v. State,* 566 S.W.2d at 88. The witness must first be informed as to the circumstances supporting a claim of bias or interest and must be given an opportunity to explain or deny such circumstances. Tex.R.Crim.Evid. 612(b); *Green v. State,* 566 S.W.2d 578, 587–88 (Tex.Cr.App.1978).

No nexus was established between the admission made by appellant to Webb and Webb's alleged hopes of early release. Furthermore, trial counsel failed to lay a proper foundation upon which to impeach the testimony of the State's witness Johnny Webb. When a party does not lay the proper predicate for impeaching a witness, it is not error to refuse to allow the admission of such testimony. *See Moore v. State,* 652 S.W.2d 411, 413 (Tex.Cr.App.1983). Appellant's second point of error is overruled.

Appellant contends in point of error number three that the trial court erred in its charge to the jury during the punishment phase of the trial by failing to instruct the jury on the effect of parole, as parole would qualify as a "mitigating circumstance" under the facts of this case. Appellant posits that the jury discretion was impermissibly channeled to a sentence of death, in violation of the Eighth Amendment. Appellant cites *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978), which holds that a jury may not be "... precluded from considering, as a mitigating factor, any

about the case and judge the case solely upon the

evidence heard at trial.

aspect of the defendant's character or record, and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death," in support of his argument that appellant did not receive individualized treatment.

The concept of parole eligibility bears no relationship to the defendant's character or record, or circumstances of the offense. *Smith v. State*, 898 S.W.2d 838, 853 (Tex.Cr.App.1995), and cases cited therein. Rather, mitigating evidence is defined as any evidence that a juror might regard as reducing the defendant's moral blameworthiness. Tex.Code Crim.Proc.Ann. art. 37.071 § 2(f)(4). For purposes of the Eighth Amendment, mitigating circumstances are those circumstances of "the defendant's background and character [which will support a] belief, long held by this society, that defendants who commit criminal acts that are attributable to [such circumstances] may be less culpable than defendants who have no such excuse." *Penry v. Lynaugh*, 492 U.S. 302, 319, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989); *Lewis v. State*, 815 S.W.2d 560, 567 (Tex.Cr.App.1991), *cert. denied*, 503 U.S. 920, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992). Such evidence may be considered by the jury when deliberating at punishment. *Penry v. Lynaugh*, 492 U.S. at 328, 109 S.Ct. at 2951.

Thus, we hold the matter of parole eligibility is not a proper consideration for the jury's deliberations on punishment. *Smith*, 898 S.W.2d at 853–54. Accordingly, we hold the trial court's refusal to charge the jury on the effect of parole was proper. Appellant's third point of error is overruled.

The judgment and sentence of the trial court are affirmed.

CLINTON, Judge, concurring.

In his third point of error appellant argues that the trial court erred in failing to charge the jury at the punishment phase of trial that, if sentenced to life imprisonment, he would have to serve a minimum of 35 years in the penitentiary before becoming eligible for parole. He seems to argue that this information in and of itself constitutes mitigating evidence in contemplation of the Eighth Amendment to the United States Constitution. The majority rejects this argument on the basis of its naked conclusion that "parole eligibility bears no relationship to the defendant's character or record, or the circumstances of the offense." At 859. I agree, at least, that appellant fails to establish in his brief how minimum parole eligibility constitutes constitutionally mitigating evidence in this case.

In my view, minimum parole eligibility is constitutionally mitigating only to the extent that, in combination with other evidence, it tends to show that the capital defendant will not "commit criminal acts of violence that would pose a continuing threat to society." Article 37.071, § 2(b)(1), V.A.C.C.P. See *Smith v. State*, 898 S.W.2d 838 (Tex.Cr.App. 1995) (Clinton, J., dissenting, 898 S.W.2d at 864 & 867–68; Maloney, J., dissenting, 898 S.W.2d at 882–84). It has no intrinsically mitigating significance otherwise. *Id.*, (Maloney, dissenting, 898 S.W.2d at 874–75). Appellant does not argue that he put on evidence to show, e.g., that for the duration of his lengthy incarceration he will pose no threat to the prison population or that by the time he is eligible for parole he will not pose a threat to any facet of society. Compare *Matson v. State*, 819 S.W.2d 839 (Tex.Cr. App.1991). In combination with such evidence, information about minimum parole eligibility is "indisputably relevant" to the issue of future dangerousness. Had appellant adduced such evidence, to prevent him from also informing the jury of his minimum parole eligibility date would likely have violated the Eighth Amendment in much the same way it would violate due process. *Smith v. State*, supra (Clinton, J., dissenting).

Because he did not, however, I join the judgment of the Court. I do not join its opinion.

MALONEY, J., joins this opinion.

BAIRD, J., joins this opinion for the reasons stated in *Matson v. State*, 819 S.W.2d

839 (Tex.Cr.App.1991), but for the reasons stated in his concurring opinion in *Smith v. State*, 898 S.W.2d 838 (Tex.Cr.App.1995) (Baird, J., concurring), specifically does *not* join that portion of the opinion referring to the dissenting opinions in *Smith*, 898 S.W.2d 838 at 857 and 872 (Clinton, J., dissenting and Maloney, J., dissenting.).

OVERSTREET, Judge, concurring.

In point number three, appellant alleges, "The Trial Court erred in its charge to the jury during the punishment phase of the trial by failing to instruct the jury on the effect of parole, as parole would qualify as a 'mitigating circumstance' under the facts of this case." Appellant's argument in support of that point focuses upon the second special issue asking whether, after consideration of all of the mitigating evidence, there is a good reason for the defendant to be sentenced to life imprisonment rather than death. He notes that the United States Supreme Court has grappled with the proper role that the State may play in guiding juries in the assessment of punishment versus an improper restriction of the sentencing authority's ability to exhibit mercy. He suggests that since the State must restrict the conduct for which the defendant becomes eligible for death, but must not restrict the sentencer in consideration of factors that might weigh against imposing a death sentence, the trial court's absolute refusal to give the jury information about parole amounted to an instruction that the jury may not, or should not, consider it. Appellant insists that such impermissibly channeled the jury's discretion to a sentence of death in violation of the Eighth Amendment of the United States Constitution.

As appellant's claim avers error in terms of instructions on parole being mitigating evidence, I agree with the majority's conclusion that the trial court's refusal to charge the jury on the effect of parole was proper because I do not believe that such evidence is necessarily within the ambit of *Penry*. I also point out that this Court's previous caselaw has held that a trial court properly refuses to instruct the jury at the punishment stage of a capital murder trial on the parole laws in

Texas. *Elliott v. State*, 858 S.W.2d 478, 490 (Tex.Cr.App.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 563, 126 L.Ed.2d 463 (1993); *Boyd v. State*, 811 S.W.2d 105, 121 (Tex.Cr. App.1991), *cert. denied*, 502 U.S. 971, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991); *Knox v. State*, 744 S.W.2d 53, 62–64 (Tex.Cr.App. 1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2834, 100 L.Ed.2d 934 (1988); *Andrade v. State*, 700 S.W.2d 585, 587–88 (Tex.Cr.App. 1985), *cert. denied*, 475 U.S. 1112, 106 S.Ct. 1524, 89 L.Ed.2d 921 (1986).

Nevertheless, I point out that in *Simmons v. South Carolina*, —— U.S. ——, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) the U.S. Supreme Court has recently found denial of the constitutional right to due process and therefore reversible error in a trial court refusing to inform a jury of the defendant's parole ineligibility. While we have initially interpreted *Simmons'* application to our Texas capital punishment procedures, *see Smith v. State*, 898 S.W.2d 838 (Tex.Cr.App.1995), I cannot agree with the majority's broad blanket statement that "the matter of parole eligibility is not a proper consideration for the jury's deliberations on punishment." *Willingham v. State*, 897 S.W.2d 351, 359 (Tex.Cr.App.1995). Pursuant to *Simmons*, and the Due Process Clause of the U.S. Constitution, there are circumstances in which it may be appropriate and/or necessary to inform the jury of parole law in capital punishment situations. I also note that in the case at bar, during punishment deliberations the jury sent out a note asking about what a life sentence means in terms of years and about whether parole could be denied.

Article 37.07, § 4, V.A.C.C.P., enacted after an amendment to the Texas Constitution, mandates that the trial court, i.e. the judicial department, include instructions on parole law in non-capital felonies; thus, jury instructions on parole law are now constitutionally permissible and are not in violation of separation of powers principles. I also note that while Art. 37.07, § 4, V.A.C.C.P. provides for the jury to be informed of various matters as to parole eligibility in non-capital punishment proceedings, it does not prohibit

such information from being provided to juries in capital proceedings. I also do not believe that the Legislature's silence in not amending Article 37.071, V.A.C.C.P. to provide for parole law instructions in capital proceedings should necessarily be construed to mean that the Legislature affirmatively meant that such instructions should not be given in capital cases. I am unwilling to conclude that such silence absolutely indicates that the legislative body of Texas reviewed our decisions in caselaw and somehow affirmatively decided that this Court's opinions on the issue represented its intentions.

Because I agree that information about the effect of parole is not necessarily within the ambit of *Penry* mitigating evidence, I agree with the majority's disposition of point of error number three. I therefore concur only in the results reached.