IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,370






ROBERT LYNN PRUETT, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM BEE COUNTY





 

 PRICE, J., delivered the opinion for a unanimous Court.


O P I N I O N



 A Bee County Jury convicted the appellant, Robert Lynn Pruett, of killing
Correction Officer Daniel Nagle while the appellant was incarcerated at McConnell prison
unit in Beeville, Texas. (1) Pursuant to the jury's answers to the special issues set forth in
Texas Code of Criminal Procedure Article 37.071, §§ 2(b) and 2(e), the trial judge
sentenced the appellant to death. (2) Direct appeal to this Court is automatic. (3) The appellant
raises four points of error challenging his conviction and sentence. In three of the points
of error, he claims that the trial court erred by improperly denying him the fundamental
constitutional right to present a meaningful defense by excluding the testimony of one
witness and limiting the cross-examination of two other witnesses. The appellant also
claims that the trial court erred in admitting a "Case Summary" of his previous conviction
during the punishment phase of his trial, which he claims was prepared in anticipation of
litigation. We reject each of his contentions and affirm the trial court's judgment.

RIGHT TO PRESENT A MEANINGFUL DEFENSE

 In his second point of error, the appellant challenges the trial court's refusal to
allow witness Damont Jackson to testify during the guilt phase of the trial. The appellant
contends that the trial court's erroneous evidentiary ruling denied him the fundamental
constitutional right to present a meaningful defense. He argues that he has a fundamental
right to present evidence of his defense so long as the evidence is relevant and is not
excluded by an established evidentiary rule. (4) Evidence is relevant if it has been shown to be
material to a fact in issue and if it makes that fact more probable than it would be without
the evidence. (5) We review the trial court's decision to bar the admission of evidence under
an abuse of discretion standard. (6)

 The appellant was charged with the December 17, 1999, murder of correctional
officer Daniel Nagle, which occurred in the McConnell prison unit in Beeville, Texas. 
State's witness Anthony Casey, an inmate who was housed in the same unit as the appellant
at the time of the offense, testified that on the day of the murder he heard the appellant
talking to an inmate named Flash about a weapon. The appellant also told Casey that
"something was going to happen." Casey later saw that the appellant was inside the locked
multipurpose room that was connected to Nagle's office. The appellant told Casey not to
come into the multipurpose room. Casey went outside to the "rec yard" and through a glass
window he saw the appellant standing near Nagle's desk. He then saw the appellant walking
towards the "C-Pod" area of the prison. He later saw the appellant in a hallway. While in
the hallway, the appellant took off his clothes, pushed them through a "gas port" onto the
rec yard, and changed into another set of clothes provided by an inmate. Casey picked up
the appellant's discarded clothes and placed them in a box in the rec yard. Casey observed
blood on the appellant's discarded clothes.

 After the State rested, defense counsel attempted to call witness Damont Jackson to
the stand. Defense counsel argued that Jackson's testimony was necessary to show that
Casey made a prior inconsistent statement that was admissible under Texas Rule of
Evidence 801(e). Jackson initially testified outside the presence of the jury that he
overheard Casey and inmates Bill Spaulding and Randy Burns say that the appellant did not
murder Nagle, that "some Mexican dude" did it, and that they were going to testify because
they had something to gain from the District Attorney. Jackson later clarified what he
heard:

[JACKSON]: Spaulding - - Spaulding told me the most - - he's the one that
told me the most stuff. 


THE COURT: Yeah, but Spaulding hasn't testified to the jury. Okay?


[JACKSON]: Okay.


THE COURT: I am allowing - - see, the jury has heard Casey but they haven't
heard Spaulding.

 Now, if they bring Spaulding to testify and he testifies, I may let you
come back and say if it's different than what he said in your presence, but
right now we're only dealing with Casey. Okay?


[JACKSON]: Well, Spaulding is the one who disclosed the most
information, you know.


THE COURT: Casey didn't say - - 


[JACKSON]: Casey didn't say all that Spaulding said, so - - 


[PROSECUTOR]: What did Casey say?


THE COURT: He says - - what, if anything, did Casey say in your presence?


[JACKSON]: I just heard him talking to Burns in a holdover cage, you know,
on a block. And he said that he wished we would stay out of his business
because we were going to end up making him get a murder case because we
disclosed what he said; then, you know, he was going to have to ride his own
heat.


Upon further questioning, Jackson also stated that he never heard Casey say that the
appellant did not murder Nagle. Instead, Casey told another inmate, Kevin Veschi, that
"Pruett didn't stab the officer but he was going to testify anyway to get a case off of him,"
and Veschi relayed this information to Jackson. 

 After hearing Jackson's testimony outside the presence of the jury, the trial court
refused to permit him to testify in front of the jury:

THE COURT: . . . And if he is a witness to the incident, then, I'll let him
testify. But he is here to tell people that he is not supposed to say something
he never heard uttered in his presence.


[DEFENSE COUNSEL]: He is here to tell people that a witness told him not
to say something that he knew that he did.


THE COURT: You have got it on the record. My ruling is that he doesn't get
to testify since - - 


[DEFENSE COUNSEL]: Okay, Judge.


THE COURT: - - that is all he is being offered for.

 You may step down.

 

 The trial court did not abuse its discretion in deciding to exclude Jackson's
testimony. Jackson never personally heard Casey make a prior inconsistent statement. 
Even assuming that the appellant met the requirements for the admission of a prior
inconsistent, there was no hearsay exception offered for Veschi's statement to Jackson.
Jackson's testimony was not admissible. Point of error two is overruled.

 In his fourth point of error, the appellant again argues that the trial court denied him
the fundamental constitutional right to present a meaningful defense. He specifically
complains that the trial court erroneously excluded evidence "that Nagle's death may have
been related to an investigation involving correctional officers smuggling contraband into
the prison."

 Defense counsel informed the trial court outside the presence of the jury that he
wanted to question Thomas J. Prasifka, the warden of the McConnell prison unit, about "the
fact that there were 30 or more officers indicted for smuggling dope into the prison and
that Officer Nagle may have actually ratted some of them out." Defense counsel argued
that this evidence was necessary to show that "[t]here was a motive for the gang members
who were getting the drugs to kill Mr. Nagle, and there was a motive for corrupt guards to
kill Mr. Nagle." Defense counsel questioned Prasifka outside the jury's presence to
determine if Nagle had any involvement in the investigation of the indicted correctional
officers. Prasifka testified that Nagle did not act as an informant and had no involvement in
the investigation. The trial court refused to permit defense counsel to pursue this line of
questioning with Prasifka in front of the jury.

 Defense counsel failed to produce any evidence in support of his speculative theory
that Nagle was killed in retaliation for acting as an informant against his fellow correctional
officers. As this court noted in Wiley v State, "The danger of 'confusion of the issues' and
'misleading the jury' arises when circumstantial evidence tends to sidetrack the jury into
consideration of factual disputes only tangentially related to facts at issue in the current
case." (7) Prasifka denied that Nagle had any involvement in the investigation. Allowing the
appellant to explore this issue without further evidence and in the face of Prasifka's denial
of a link between Nagle and the investigation would serve no purpose but to "confus[e] the
issues" and "mislead[] the jury." (8) The trial court did not abuse its discretion in refusing to
permit defense counsel to question Prasifka about this issue in front of the jury. Point of
error four is overruled. 

LIMITS ON CROSS-EXAMINATION

 The appellant contends in his third point of error that the trial court improperly
limited his cross-examination of Dr. Lloyd White, the medical examiner who performed
the victim's autopsy. 

 At the time of the trial, Child Protective Services ("CPS") was investigating White
and his family regarding the welfare of his minor child. The State requested "that any
testimony about White's difficulty with the Child Protective Services not be made a part of
this testimony and before this jury." After permitting defense counsel to question White
outside the presence of the jury to determine whether or not he had a bias or expected any
favors from the State in return for his testimony, the trial court ruled that White could not
be asked about the CPS investigation.

 The exposure of a witness's motivation to testify for or against the accused or the
State is a proper and important purpose of cross-examination. (9) The burden of showing the
relevance of particular evidence to the issue of bias rests on its proponent. (10) The
parameters of cross-examination for a showing of bias are within the sound discretion of
the trial court. (11) The trial court may impose reasonable limits on cross-examination to
avoid harassment, prejudice, confusion of the issues, endangering the witness, and the
injection of cumulative or collateral evidence. (12) The trial court's determination is not
reversible unless the appellant shows a clear abuse of discretion. (13)

 Before a party may impeach a witness by showing bias, a specific connection
between the witness's testimony and the cause must be shown that discloses an actual bias
or motive. (14) To establish this connection, the witness should be asked about any possible
interest or bias he may have before there is an attempt to prove interest or bias otherwise. (15) 
Then the witness must first be informed about the circumstances supporting a claim of bias
or interest and must be given an opportunity to explain or deny such circumstances. (16)

 White testified outside the presence of the jury that he believed that CPS was
harassing him because they were dissatisfied with his expert testimony on sudden death
syndrome in other, unrelated infant death cases. He stated that he was apprehensive about
testifying in the instant case because during the course of their investigation CPS "listed
the fact that [he] testified in court as evidence that [he] was incompetent and mentally
unbalanced and not a fit parent because that testimony required [him] to miss some
meetings that they had scheduled." Despite his apprehension about testifying, White
clarified that he would "tell the truth and give a full objective answer in every case." He
further testified that he did not have any deal with the State in exchange for his testimony
and that "[t]here would be no bias that would cause [him] to lie." 

 The trial judge in this case assessed whether there was a potential for bias based
upon the testimony of White and found that the appellant failed to demonstrate that White
had any bias for or against the State of Texas stemming from the pending CPS investigation. 
The trial court did not abuse its discretion in limiting the cross-examination of White. 
Point of error three is overruled.

ADMISSION OF EXHIBIT

 In his first point of error, the appellant asserts that the trial court erred in admitting
State's Exhibit 62 during the punishment phase of the trial. State's Exhibit 62 is a packet
comprising numerous records from the Texas Department of Criminal Justice (TDCJ). The
appellant specifically complains about a portion of State's Exhibit 62 entitled "Case
Summary," which describes the murder for which he was incarcerated when he committed
the instant offense. The appellant first argues that the Case Summary does not purport to be
a "Classification Record" as referred to in the affidavit. He next argues that the prison
employee who produced the "Case Summary" did not have knowledge of the events
recorded. He also argues that "the documents in SX-62 were not generated by prison
employees." The appellant, however, failed to object on these bases at trial, so these
particular complaints are not preserved for our review. (17)

 The appellant also argues that State's Exhibit 62 was inadmissible because the
records contained therein "were compiled for the purpose of litigation." (18) This complaint
is preserved for our review because the appellant objected on this basis at trial. Barbara
Trevino, the chief of classification and the custodian of records at the John B. Connally
Unit of TDCJ, initially testified that the records were compiled for the purpose of litigation
when she was questioned by defense counsel. However, upon further questioning by the
prosecutor, Trevino testified as follows:

[PROSECUTOR]: You were asked if these were prepared for litigation. And
I know that you put them together at our request for this case, but you didn't
actually write out all these records so we could use them in court, did you?


[TREVINO]: No, sir.


[PROSECUTOR]: These records previously existed?


[TREVINO]: Yes, sir.


[PROSECUTOR]: Some of them are six years old; is that correct?


[TREVINO]: Yes, sir.


[PROSECUTOR]: So when you were asked if they were prepared for
litigation, in one sense they were, you put them together.


[TREVINO]: I compiled them for you, yes, sir.


[PROSECUTOR]: To make a packet for us, but you didn't actually create the
records?


[TREVINO]: No, sir.

 

Trevino clarified that the records themselves were not actually created in anticipation of
litigation. The appellant has failed to establish that the trial court erroneously admitted
State's Exhibit 62. Point of error one is overruled.

 We affirm the judgment of the trial court.

Delivered: September 22, 2004.


Do Not Publish.
1. Tex. Pen. Code § 19.03(a).
2. Art. 37.071, § 2(g).
3. Art. 37.071, § 2(h).
4. See Miller v. State, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001).
5. Ibid.
6. Ibid.
7. 74 S.W.3d 399, 407 n.21(Tex. Crim. App. 2000).
8. Ibid.
9. Ibid.; Carpenter v. State, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998).
10. Chambers v. State, 866 S.W.2d 9, 26-27 (Tex. Crim. App. 1993).
11. Id., at 27.
12. Lagrone, 942 S.W.2d at 613.
13. Chambers, 866 S.W.2d at 27.
14. Willingham v. State, 897 S.W.2d 351, 358 (Tex. Crim. App. 1995).
15. Ibid.
16. Ibid.
17. TEX. R. APP. P. 33.1.
18. See Cole v. State, 839 S.W.2d 798, 809 n.9 (Tex. Crim. App. 1990)(noting that
reports prepared in contemplation of litigation are inherently unreliable due to the maker's
bias and motivation to make misrepresentations).