# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00666-CR

**Manuel Gaspar Martinez, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
## NO. 9034093, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Manuel Martinez guilty of (1) aggravated assault with a deadly weapon and (2) injury to a child. *See* Tex. Pen. Code Ann. § 22.02(a)(2) (West Supp. 2004-05), § 22.04(a)(3) (West 2003). Martinez pleaded true to the enhancement allegations, and the jury assessed punishment of 99 years' imprisonment on the first count and 20 years' on the second count.

On appeal, Martinez contends that (1) the evidence presented at trial was factually insufficient to support the verdict, (2) the trial court abused its discretion by allowing a witness to be improperly impeached with an alleged "extraneous bad act," and (3) the trial court abused its discretion by allowing a lay witness to testify as to legal conclusions regarding the competency of a child witness to testify. For the following reasons, we affirm the conviction.

## BACKGROUND

Lisa Sanchez and her two-year-old daughter, S.S., came to live with Martinez in the summer of 2002. Sanchez testified that Martinez was mean to S.S. throughout the time they lived together; however, the allegations of abuse centered around Thanksgiving 2002.

Sanchez, Martinez, and S.S. spent Thanksgiving at the home of Martinez's sister. Sanchez testified that Martinez was angry with her because he felt that she was "checking out" his nephew. Her testimony indicated that Martinez directed his anger towards S.S. when they arrived home that evening. Sanchez testified that, over the course of the holiday weekend, Martinez repeatedly struck S.S. on her torso, face, arm, and bottom using his hand, fist, and a belt. These physical attacks were accompanied by yelling, screaming, and calling S.S. various obscenities. She testified that on Friday, Martinez put S.S. in the corner for several hours and struck her with his hand or belt if she moved in the slightest; that on Saturday, Martinez again placed S.S. in the corner for four or five hours and struck her on the lower back and bottom with his hand or belt until her bottom was red and swollen; and that on Sunday, the beatings and verbal abuse continued.

By Monday, December 2, Sanchez determined that she had to leave Martinez's house with her daughter and call the police. Martinez refused to let her use the telephone and would not allow Sanchez to take S.S. with her. She left the home and called the police from a pay phone on the corner. During the call, an upset Sanchez indicated that Martinez was keeping her from her child and that she was in need of police assistance in order to get her child back. During the initial 911 call, Sanchez did not mention any physical abuse of her child or herself.

When Corporal Randall Milstead of the Austin Police Department responded to Sanchez's call, he found her outside a grocery store about a block from Martinez's home. Corporal Milstead testified that when he arrived on the scene, Sanchez was visibly upset and crying. It was during this first meeting that Sanchez told the officer that Martinez had been beating her daughter and that she wanted to get her daughter back. Corporal Milstead left Sanchez at his vehicle and proceeded with another officer to Martinez's home.

After initially resisting, Martinez's father ultimately allowed the officers to enter. By this time, Martinez had left the premises. Corporal Milstead found the victim curled up on the floor in one of the bedrooms. He picked her up and brought her to her mother. Corporal Milstead testified that S.S. seemed happy to see her mother and did not appear to be afraid of her.

EMS then arrived to administer emergency medical care to S.S. and to transport her to the hospital. The paramedic who examined the child found that she had widespread bruising on her eyes, cheeks, legs, and arms and had hair loss. He testified that in his opinion these injuries were consistent with Sanchez's report of abuse. At the Children's Hospital emergency room, the child was treated by Dr. George Edwards who diagnosed her as suffering from child abuse (non-accidental child trauma) and alopecia (baldness). Dr. Edwards testified at trial that the injuries he observed and treated were consistent with the history relayed to him by Sanchez and that the injuries were consistent with the child having been struck with hands, a belt, and possibly other blunt objects over a period of several days. He testified that the hair loss was likely caused by S.S. being forcibly lifted by her hair, and that it was highly unlikely that any sort of malnutrition, head lice, or head lice treatment would have caused such localized hair loss.

3

The Austin Police Department assigned Detective Martin Taylor to the case. His investigation included a videotaped interview with the child, statements from Martinez's father, the child's medical records, and videotaped interviews with Martinez's two children. Detective Taylor concluded that Martinez was the cause of the child's injuries. This conclusion was based on his investigation, including the child's testimony, which was consistent with Sanchez's allegations of abuse. In his report, Detective Taylor noted that the child did not fear Sanchez. No forensic evidence, such as fingerprints or DNA from the belt, was collected. Neither party requested such evidence or testing.

Witnesses for Martinez, primarily family members, all testified that they had never seen Martinez strike or unreasonably discipline the child and that they did not believe Sanchez to be a truthful person. Several of these witnesses testified that they had seen Sanchez pull, shake, or strike her daughter on a number of occasions and that Sanchez often left the child at home in the evenings while going out to clubs. Some family members testified that Sanchez did not feed her daughter, which caused them to question the health of the child. Several of these witnesses acknowledged that they had concerns for the safety of the child and had observed bruises and scrapes on her body; however, none had contacted the police or child protective services regarding those concerns. All of the witnesses, with the exception of Martinez's father, testified that they were not in Martinez's home during Thanksgiving weekend, when the abuse occurred. Martinez's father was present but testified that he did not hear or witness any of the conduct that Sanchez testified to because he was in his own room.

DISCUSSION

**Factual Sufficiency**

In his first issue, Martinez contends that the evidence is factually insufficient to support his conviction. In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no writ.). Due deference must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, but the reviewing court may disagree with the result when necessary to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed factually insufficient to sustain the conviction if the proof of guilt is too weak or if the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004); *see Johnson*, 23 S.W.3d at 11. Appellate courts are not free to set aside a jury verdict merely because the reviewing judges feel that a different result is more reasonable. *Id.* at 29-30. If an appellate court determines that evidence is factually insufficient, it may not substitute its own ruling to render judgment but must remand for a new trial. *Clewis v. State,* 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).

To support Martinez's conviction for aggravated assault, the evidence must support a finding that he knowingly or intentionally caused bodily injury to S.S. and exhibited a deadly weapon during the course of such conduct. Tex. Pen. Code Ann. § 22.02(a)(2) (West Supp. 2004-05); *Lane v. State,* 151 S.W.3d 188 (Tex. Crim. App. 2004). To support his conviction for injury to a child, the evidence must support a finding that he knowingly or intentionally caused bodily

5

injury to S.S., whose status as a child was undisputed. Tex. Pen. Code Ann. § 22.04(a)(3) (West 2003).

Martinez argues that the State's case rests solely on the testimony of Lisa Sanchez. He argues that his witnesses, through their testimony, discredited Sanchez to such an extent that the jury could not have based its verdict on her testimony and that any remaining evidence to support the verdict was wholly insufficient. We disagree.

It is well settled that when reviewing fact questions, deference is given to the jury's determinations involving the credibility and demeanor of witnesses. *Zuniga,* 144 S.W.3d at 481; *Cain v. State,* 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Sanchez and other State witnesses offered testimony supporting the theory that Martinez knowingly or intentionally caused bodily injury to S.S. and that, under the circumstances, his hands qualified as deadly weapons. Martinez's witnesses characterized Sanchez as untruthful and suggested that she was in fact the person who had caused the bodily injury to her daughter. The jury believed the State's evidence, credited its theory, and did not find Martinez's evidence convincing or credible. It was within the realm of the jury to make such a determination, especially in a case with very little physical or direct evidence. Therefore, we cannot substitute our judgment regarding the sufficiency of the evidence for that of the jury. *See Clewis*, 922 S.W.2d at 133. We overrule Martinez's first point of error.

**Improper Impeachment**

In his second point of error, Martinez contends that the trial court allowed defense witness Oscar Martinez to be improperly impeached upon cross-examination with an alleged

6

"extraneous bad act." Martinez argues that the trial court abused its discretion in allowing the State, over various objections, to question Oscar Martinez regarding an alleged phone call to a Sandra Lazoria. The State alleged that during the phone call, Oscar Martinez told Lazoria not to speak to the police or otherwise cooperate with the investigation into the matter of S.S.'s abuse. Although the record shows that counsel for Martinez made several objections to the State's line of questioning, he did not obtain an adverse ruling on his objection to using "extraneous bad acts" to improperly impeach. He thus failed to preserve error.

Even had the error been preserved, the trial court did not abuse its discretion by allowing the questions. The trial court's decision to admit evidence is reviewed under an abuse of discretion standard. An appellate court may reverse a trial court's decision for an abuse of discretion only when it appears that the court applied an erroneous legal standard or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. *Dubose v. State,* 915 S.W.2d 493, 497-98 (Tex. Crim. App. 1996). Stated another way, a ruling will not be reversed unless it falls outside the zone of reasonable disagreement. *Burden v. State,* 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

Generally, the use of specific instances of conduct in order to impeach a witness is prohibited. Tex. R. Evid. 608(b). The credibility of a witness may be attacked, however, by evidence that the witness is slanting his testimony against or in favor of a party as a result of personal interest or bias in the cause. Tex. R. Evid. 613(b). The court of criminal appeals specifically allows for legitimate exploration of those matters indicating the friendship or leaning of witnesses, and

7

those associated with them, toward any party or issue involved. *Hinojosa v. State,* 788 S.W.2d 594, 600 (Tex. App.—Corpus Christi 1990, writ ref'd) (citing *Gunn v. State*, 252 S.W. 172, 178 (Tex. Crim. App. 1922)). To establish interest, bias, or motive, the court of criminal appeals has held that one must first establish a "specific connection between the witness testimony and the cause, disclosing an actual bias or motive." *Willingham v. State,* 897 S.W.2d 351, 358 (Tex. Crim. App. 1995). This nexus must be demonstrated by laying a proper foundation. *Id.* This foundation is laid by first informing the witness of the circumstances supporting a claim of bias or interest, and then giving the witness an opportunity to explain or deny such circumstances. *Id; see* Tex. R. Evid. 613(b).

Oscar Martinez is appellant's brother. Because this close relationship had been previously discussed and established, the jury could potentially infer bias or motivation to slant testimony. During voir dire examination of the witness, the State made clear that the purpose of questioning the witness about the alleged telephone call was to explore the possible bias of Oscar Martinez. During Oscar Martinez's cross-examination, the specific instance was clearly described for him; he had an opportunity to explain or deny, as required by the rule; and he did deny the specific instance. Because contrary testimony was never offered, the witness was never actually impeached on the basis of this alleged specific instance of conduct. Therefore, there was no *improper* impeachment. We hold that Martinez did not preserve this error for appeal, and if he had, the trial court did not abuse its discretion in allowing the line of testimony on the grounds that it was an attempt to show the witness's bias towards Martinez. We overrule Martinez's second point of error.

**Improper Admission of Lay Witness Testimony**

Martinez's final point of error is that the trial court erred in admitting the lay witness testimony of Detective Taylor. Martinez argues that Detective Taylor's testimony called for a legal conclusion and therefore could have been offered only by an expert witness, which Taylor was not. Specifically, Martinez objected to Detective Taylor being asked about the competency of S.S. to testify. The trial court allowed Detective Taylor to answer questions regarding the competency of child witnesses in general.

The admissibility of evidence is within the discretion of the trial court, and we will not reverse absent an abuse of discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). It is undisputed that Detective Taylor was testifying as a lay witness. Therefore, his testimony under the rules was to be limited to those opinions or inferences which are (a) rationally based on the perceptions of the witness, and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Tex. R. Evid. 701. Martinez claims that Detective Taylor's testimony regarding the competency of child witnesses to testify was inadmissible under this rule because (1) the fact that the victim did not testify was never a "fact in issue," and (2) there were no ambiguities in the witness's testimony that this testimony clarified for the jury.

However, Martinez clearly made S.S.'s failure to testify a fact in issue. While questioning Detective Taylor, Martinez repeatedly made reference to the fact that the victim had not testified at trial, and noted that "we'll get to that," which opened the door to Detective Taylor's testimony on the subject. When defense counsel pursues a subject that would ordinarily be outside the realm of proper comment by the prosecutor, the defendant has opened the door and creates a right

9

of reply for the State. *Credille v. State,* 925 S.W.2d 112, 116 (Tex. App.—Houston [14th Dist.] 1996, writ. ref'd). It has been recognized that the "rule of optional completeness" addresses such situations where a party has "opened the door." Tex. R. Evid. 107; *Fuentes v. State*, 991 S.W.2d 267, 279 (Tex. Crim. App. 1999). This rule permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party, for the purpose of reducing the possibility that the jury might receive a false impression from hearing only a part of some act, conversation, or writing. *Credille,* 925 S.W.2d at 116. At trial, Martinez opened the door to the question of why the victim did not testify, and Detective Taylor's testimony regarding the competency of child witnesses was appropriate to clarify the issue.

Detective Taylor's testimony was also admissible under Rule 701. A lay witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations. *Osbourn v. State,* 92 S.W.3d 531, 535 (Tex. Crim. App. 2002) (citing to *Fairow v. State,* 943 S.W.2d 895, 898 (Tex. Crim. App. 1997)). The same court pointed out that, as a general rule, observations that do not require significant expertise to interpret and that are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. *Id.* at 537. This is true even when the witness has experience or training. *Id*. It is clear from the trial court record that Detective Taylor had personal experience in the child abuse unit with child witnesses and their ability or inability to testify. His testimony was based on inferences he had made as a result of his personal experience and observations working in that unit and was not based on scientific theory. Common sense also dictates that a three-year-old child may not be fit to testify.

10

Therefore, it was not an abuse of discretion for the trial court to admit Detective Taylor's testimony. We overrule Martinez's third point of error

Having overruled all of Martinez's points of error, we affirm the trial court's judgment.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   March 10, 2005

Do Not Publish