No. PD-598-15

IN THE COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

**RONALD BLAKE FEARS**

**VS.**

**THE STATE OF TEXAS**

Appealed From the 13TH Court of Appeals
No. 13-13-00111-CR

Original Conviction in the
District Court of Cameron County Texas
138th Judicial District Court
Cause No. 2012-DCR-986-B

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

RECEIVED IN
COURT OF CRIMINAL APPEALS

June 25, 2015

ABEL ACOSTA, CLERK

DOUGLAS H. PETTIT
680 East St. Charles St.
Suite 600
Brownsville, Texas
(956) 243-64555
(713)-956-9956
Email: dpettitlaw@hotmail.com

ATTORNEY FOR PETITIONER

0

# INDEX

TABLE OF AUTHORITIES . . . . . . . 2,3

STATEMENT REGARDING ORAL ARGUMENT . . . 4

STATEMENT OF THE CASE . . . . . . . 5

PROCEDURAL HISTORY . . . . . . . 6

QUESTION PRESENTED FOR REVIEW . . . . . 7

When the victim and the individual reporting the alleged crime to CPS are known to all parties does **Texas Family Code 261.201** as it relates to the **Texas Code Criminal Procedure 39.14** require strict compliance**.** The legislature has created an unworkable procedure that denies an accused access to CPS records for cross examination and the preparation of a defense.

ARGUMENT or REASON FOR REVIEW . . . . . 8

ARGUMENT AND AUTHORITIES. . . . . . 9

PRAYER FOR RELIEF . . . . . . . 16

CERTIFICATE OF SERVICE . . . . . . 17

APPENDIX

1

# TABLE OF AUTHORITIES

## UNITED STATES CONSTITUTION

U. S. CONST. 6th AMENDMENT . . . . . . 11,12

U. S. CONST. 14th AMENDMENT . . . . . . 11.12

## TEXAS  CONSTITUTION

TEX. CONST. ART. 1 SECTION 10 . . . . . . 12

## TEXAS PENAL CODE

Tex. P. Code Ann. §§ 21.02, 22.011(a)(2), 21.11(a) . . . 5

## TEXAS FAMILY CODE

Texas Family Code 261.201 . . . . .7,8,9,11,13,14,15

Texas Family Code 264.408 . . . . . 9,15

## TEXAS CODE OF CRIMINAL PROCEDURE

Texas Code Criminal Procedure 39.14. . . . . . 7,8,15

## SUPREME COURT CASES

**Dennis v. United States,** 384 U.S. 855, 86 S.Ct.1851, 1966 . . 13

**Pennsylvania vs. Richie** 480 U.S. 39, 59, (1987) . . . . 11

## TEXAS CASES

**Thomas v. State** 837 S.W. 2d. 106,113-114
(Tex Crim. App. 1992) . . . . . . 11

## OTHER JURISDICTIONS

**Commonwealth v. Clancy**, 402 Mass 664,
524 N.E.2d 395 (1988) . . . . . . 13

**Commonwealth v. Liebman**, 388 Mass. 483, 489, 446
N.E.2d 714 (1983) `. . . . . . 13

**Commonwealth v. Stockhammer,** 409 Mass 867,
570 N.E. 2d, 992 (1991) . . . . . . . . . 13

## <u>TEXAS RULES OF EVIDENCE</u>

Texas Rules of Evidence 615 . . . . . . . 10

## TEXAS RULES APPELLATE PROCEDURE

TEX. R. APP. P. 68.4 . . . . . . . 4

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to **TEX. R. APP. P. 68.4**, if this court grants this Petition for Discretionary Review, Petitioner requests oral argument in order to expand upon the arguments herein.

# STATEMENT OF THE CASE

The Petitioner was charged in a six count indictment with continuous sexual assault of a child (Count 1); sexual assault of a child (Count 111)[1], and indecency with a child (Counts (IV V, and VI). (C.R. p. 15) **Tex. P. Code Ann. §§ 21.02, 22.011(a)(2), 21.11(a).** (CR-16)

The Appellant entered a plea of "not guilty" to the indictment and requested a trial by jury. (R.R. Vol 3 p. 14). The Jury returned a verdict of guilty to Counts I, III, IV, V, and VI. (CR. p. 19). The Court assessed punishment at 50 years in Texas Department of Corrections Count I, and 20 years in the Texas Department of Corrections Counts III, IV, V, and VI. (CR p. 19)

On April 24, 2015 the 13th Court of Appeals filed a Memorandum Opinion affirming Petitioners case in cause number 13-13-00111-CR. Petitioner filed a request for an extension to file a PDR with the Honorable Court of Criminal Appeals. This petition is due on or before June 24, 2015.

---

[1] The State abandoned Count II, aggravated sexual assault of a child, after the close of its case. The petitioner was charged with continuous sexual assault in Count 1.

5

## STATEMENT OF PROCEDURAL HISTORY

A panel of the Thirteenth Court of Appeals affirmed the trial court's ruling, in a memorandum opinion dated April 23, 2015. The Petitioner did not file a motion for rehearing in this cause. Petitioner filed an extension to file the PDR which was granted by this Court on May 19, 2015. This Petition is due to be filed on or before June 24, 2015.

## QUESTION PRESENTED FOR REVIEW

1. When the victim and the individual reporting the alleged crime to CPS are known to all parties does **Texas Family Code 261.201** as it relates to the **Texas Code Criminal Procedure 39.14** require strict compliance**.** The legislature has created an unworkable procedure that denies an accused access to CPS records for cross examination and the preparation of a defense.

**TO THE COURT OF CRIMINAL APPEALS OF THE STATE OF TEXAS:**

**COMES NOW, RONALD BLAKE FEARS**, Petitioner in the above entitled and numbered cause, by and through his attorney of record Douglas H. Pettit and files this Petition for Discretionary Review and, in support of which, would respectfully show this Honorable Court the following:

## QUESTION PRESENTED FOR REVIEW

When the victim and the individual reporting the alleged crime to CPS are known to all parties, does **Texas Family Code 261.201** as it relates to the **Texas Code Criminal Procedure 39.14** require strict compliance**.** The Legislature has created an unworkable procedure that denies an accused access to CPS records for cross examination and the preparation of a defense.

## ARGUMENT or REASON FOR REVIEW

The issue concerns  CPS records and the trial court and district attorney's office failure to turn those records over to trial counsel. The State's position was the records were not discoverable under **Texas Family Code 261.201.**  (R.R. Vol 4 p. 187) (R.R. Vol 4 p. 261) (R.R.Vol 5 p. 138) This is conflict with the procedure set out in **Texas Code Criminal Procedure 39.14.** District Attorney's continue to rely on **Texas Family Code 261.201** to deny an accused access to CPS records when the victim is known and the person reporting the alleged crime to CPS is known.

8

## ARGUMENT AND AUTHORITIES

The individual who reported the alleged crime to CPS was also the "outcry witness" in this case. (R.R. Vol 3 p 78) (R.R. Vol 3 p. 92). The victim of the alleged abuse was the step daughter of the Petitioner. (R.R. Vol 3. p. 73) Trial Counsel was not permitted to review the CPS records prior to trial or during cross examination of the CPS worker. (R.R Vol. 4 p. 190) (R.R. Vol 4 p. 260) It is further alleged that two audio statements taken by CPS of the victim and her sister were not turned over prior to the trial.

Reading **Texas Code of Procedure 39.14** it expressly refers to **Texas Family Code 264.408**, which refers to **Texas Family Code 261.201**. **Texas Code Criminal Procedure 39.14** indicates that subject to the restrictions listed in 264.408 the information should be turned over. **Texas Family Code 264.408** applies to public release of information under **Chapter 552**, public records requests and lists that the video tapes should not be copied, not disclosure denied. Thus the courts must look back to the **Texas Family Code 261.201.**

The Thirteenth Court of Appeal upheld the trial court's ruling holding the Petitioner was not entitled to view CPS records which contained the investigators report and oral tape recorded statements of victim and her sister pursuant to **Texas**

**Family Code 261.201**.[2]

Petitioner's attorney first request for the records came after direct examination and prior to cross examination of the CPS worker. (R.R. Vol 4 p.190) The request was made under **Texas Rules of Evidence 615** in order to conduct cross examination of the investigating officer. The records were turned over to the court after cross examination. (R.R. Vol 4 p. 264) The Trial Court provided a limited amount of the material for counsel after his examination was concluded.

During the direct examination of the child victim it was learned that additional information contained within the CPS records had not been given to the Petitioner's trial attorney. The child victim had been interviewed by CPS worker and the interview had been audio recorded. (R.R. Vol 5 p. 136) Prior to the cross examination of child victim by the defendant's trial counsel requested that he be allowed to listen to the audio tape. (R.R. Vol 5 p. 138). The Trial Court first inquired whether the Defendant's attorney had previously had an opportunity to listen to the tape. (R.R. Vol 5 p. 138) and the State of Texas responded that "they were not allowed to disclose CPS recordings. (R.R. Vol 5 p. 138) The Court

---

[2] The record submitted to the 13th Court of Appeals also contains CPS records in the possession of the Assistant District Attorney and these documents have not been reviewed by trial counsel or appellant counsel but were ordered sealed by the trial court.

ordered that those be turned over to trial counsel prior to the cross examination of the victim. (R.R. Vol 5 p 138)

Petitioner's attorney requested three continuances from the Court during the trial to prepare for cross examination of witnesses and review the CPS records.  All requests were denied**.**

The Court of Appeals in their opinion stated that "the conflict that can arise between the State's need to keep information related to child abuse investigations confidential with a defendant's need for a fair trial is well recognized" citing **Pennsylvania vs. Richie** 480 U.S. 39, 59, (1987). The Thirteenth Court of Appeals used the example regarding the Crime Stoppers information as stated in **Thomas v. State** 837 S.W. 2d. 106,113-114 (Tex Crim. App. 1992) The Court of Appeals also stated that **Texas Family Code section 262.201** provides for exactly the type of procedure approved in **Ritchie** and **Thomas. **.  This requires an in camera inspection of the material by the trial judge; and an ongoing duty to disclose any confidential material that is relevant; or that becomes relevant during the trial.

The process set up in **Tex. Family Code 261.201** for obtaining CPS records for an accused is unworkable as it relates to criminal prosecution. The Court's opinion is out of touch with the reality of trial work. It infringes on the Defendant's right to confront and cross examine a witness as guaranteed by the **6th and 14th**

11

**amendment to the United States Constitution** and **Article I section 10 of the Texas Constitution**.

The procedure is unworkable for two reasons. First it places the emphasis on the district judge to review and decipher the information. Second it also demands that the District Attorney actually turn over all the CPS documents to the trial court for review.

The Federal standard requiring only an in camera review by the trial judge of privileged records requested by the defendant rests on the assumptions that trial judges can temporarily and effectively assume the role of advocate when examining such records; and that the interests of the State and complainant in the confidentiality of the records cannot adequately be protected in any other way. Neither assumption withstands close scrutiny.

As to the first assumption, the United States Supreme Court has said that " 'it [is] extremely difficult for even the most able and experienced trial judge under the pressures of conducting a trial to pick out all of the [information] that would be useful in impeaching a witness.' ... Nor is it realistic to assume that the trial court's judgment as to the utility of material for impeachment ... would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be

made only by an advocate." **Dennis v. United States,** 384 U.S. 855, 874–875, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966 The danger lurking in the practice of ... in camera review [of privileged documents] by the trial judge is a confusion between the roles of trial judge and defense counsel. The judge is not necessarily in the best position to know what is necessary to the defense." **Commonwealth v. Clancy**, 524 N.E.2d 395. **Commonwealth v. Liebman**, 388 Mass. 483, 489, 446 N.E.2d 714 (1983) ("[W]hen a judge undertakes to decide if [evidence] benefits the defendant's case he is 'assuming vicariously and uncomfortably the role of counsel'. **Commonwealth v. Stockhammer,** 409 Mass 867, 570 N.E. 2d, 992 (1991)

In the present case the records were on CD's. The trial judge had to have actually reviewed each disk and know which evidence was to be released. When The District Attorney in the Appellant's case provided the disks to the Court she left one out. This last disk was not turned over until right before the victim testified.(R.R. Vol 6 p.6)

The prosecutor consistently though out the trial and on appeal has relied on **Texas Family Code 261.201**. She stated on numerous occasions that the documents should not be turned over to the Defendant that the documents were protected. The record is clear that the CPS records were contained within the

13

District Attorney's file but trial counsel was not allowed to view them. It is further alleged that the records were sealed and filed in the records of this cause. It is unknown whether anyone else has ever viewed them.

In reading the **Texas Family Code 261.201** the law was set up to protect the victim and the person who was making the report to CPS. It makes no sense to deny the records when those facts are known to all parties.

In a sexual assault trial the child or victim is known to all parties, and the outcry individual in this case was the person that called CPS. The law is being used by the State of Texas to deny the individual charged with sexual offenses from access to records that may assist in his defense. To allow the State to hide behind this statute is not only incorrect but goes against everything that the new discovery rules are trying to change.

The rights of defendants charged with sexual offenses in the State of Texas has diminished rightfully or wrongfully based on the heinous nature of the crime. The legislature has first created a specific crime of continuous sexual assault that carries a minimum punishment 25 years in the penitentiary. The law further decrees that the heinous nature of the crime requires that those convicted are not entitled to parole.

District attorney's offices have created special units to prosecute these types

of offenses. We must and should protect our children from predators. But in doing so we also must do so without tromping on the right to a fair and impartial trial.

When the child is known and the individual making the report is known by all parties and the records are in the possession of the district attorney what is the purpose of hiding the documents? Allowing the District Attorney to rely on **Texas Family Code 261.201** when the victim is known and the individual reporting to CPS is known it is not logical or productive for the efficient administration of justice.

Allegedly all of the CPS documents in Petitioners case have been filed with the Court of Appeals. It is unknown if anything in the documents would have been of use to the Petitioner at trial. The only individuals that have viewed them are the trial court, appellate court, CPS personnel, and the district attorney. It should be the defendant and his trial counsel who make the determination that the records may or may not be of any use to him during the trial not the district attorney and the trial judge.

Petitioner is requesting that the Honorable Court of Criminal Appeals allow this points of review regarding **Texas Family Code 261.201** as it relates to **Tex. Crim. Proc. 39.14**. and **Texas Family Code 264.408**. The issue is not one of how was the Petitioner harmed it is one of fundamental fairness. It is the right to cross

examining a witness and the ability to prepare to cross examine the witness in a timely and effective manner. It is the right to review of the documents that the State of Texas intends to use to convict the Petitioner.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** appellant prays this Honorable Court to consider the ground for review raised herein to grant this petition for discretionary review, and to order a full and complete hearing on the merits with briefs.

Respectfully submitted,

/S/Douglas H. Pettit
Douglas H. Pettit
680 East St. Charles Ave
Suite 600
Brownsville, Texas 78520
956-243-6455
Email: Dpettitlaw@hotmail.com
State Bar Number 15861300

ATTORNEY FOR PETITIONER

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing instrument has been served by hand delivery to the Cameron County District Attorney's Office. On this the 24 day of June 2015.

/s/ Douglas H. Pettit
Douglas H. Pettit

This is to certify that a true and correct copy of the foregoing instrument has been served on the State Prosecuting Attorney by mail on this the 24 day of June 2015.

State Prosecuting Attorney
P.O. Box 12405
Austin, Texas 78711

/s/ Douglas H.  Pettit
Douglas H. Pettit



# NUMBER

# 13-13-00111-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**RONALD BLAKE FEARS,**                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                              **Appellee.**

## On appeal from the 138th District Court
## of Cameron County, Texas.

# OPINION

**Before Justices Rodriguez, Garza, and Longoria**
**Opinion by Justice Longoria**

By fifteen issues, which we have reordered, appellant Ronald Blake Fears

challenges his convictions for sexual abuse of a child (Count I), sexual assault of a child

(Count III),[1] and indecency with a child by contact (Counts IV–VI). *See* TEX. PENAL CODE ANN. §§ 21.02, 22.011(a)(2), 21.11(a)(1) (West, Westlaw through 2013 3d C.S.). We affirm.

## I. BACKGROUND

### A. Initial Statements

During the weekend of October 2, 2011, C.T.,[2] the minor complainant in this case, was sleeping over at the home of her friend Chesney St. John (Chesney) and helping to babysit Chesney's younger siblings. At the time, Chesney was sixteen years old and C.T. was fourteen years old.[3] C.T. confided to Chesney that C.T. needed help telling something to C.T.'s mother, which C.T. evidently found difficult to discuss. Chesney testified that C.T. typed a message into the text message function of her phone, showed Chesney what she wished to tell her mother, and then erased it. According to Chesney, the message revealed that C.T. was being sexually abused by appellant, her stepfather. Chesney further testified that she learned that the abuse began when C.T. was eight years old. Chesney called her parents, who returned to the house. Chesney first repeated some of C.T.'s statements to Chesney's parents because C.T. was crying too much to speak.

Chesney's mother, Natalie, questioned C.T. after Chesney finished speaking and testified to C.T.'s responses at trial.[4] Natalie testified that C.T. stated that appellant forced

---

[1] The State abandoned Count II, aggravated sexual assault of a child, after the close of its case.

[2] C.T. testified under this pseudonym in the trial court. We will continue to refer to her by it in an effort to protect her privacy.

[3] Chesney was eighteen years old at the time of the trial.

[4] The trial court certified Natalie as the outcry witness under article 38.072 because she was the first person older than eighteen years to whom C.T. made a statement about the abuse. *See* TEX. CODE

2

her to perform oral sex on him and appellant performed oral sex on C.T. The most recent abuse occurred one week earlier. C.T. told her that the abuse occurred in her parents' bedroom on multiple occasions, and on one occasion, appellant attempted to vaginally penetrate her as she lay naked on the bed but stopped after she curled into a fetal position and began to cry. Natalie called the San Benito Police Department; she and Chesney accompanied C.T. to the police station and waited while C.T. gave a statement to Officer Carlos Andrade.

### B. C.T.'s Statement to Officer Andrade

Officer Andrade testified that he learned from his interview with C.T. that appellant "was only touching [C.T.'s] private areas" and that he had not penetrated her with his fingers or forced her to perform oral sex. However, Officer Andrade further testified that he did not determine before conducting the interview whether C.T. understood the terms "penetration" and "oral sex." Chesney testified that C.T. did not know the meaning of the term "oral sex" until she and C.T. spoke after C.T. gave a statement to Andrade. Chesney testified that after explaining the term, she believed that appellant had forced C.T. to perform oral sex. Andrade also testified that C.T. confirmed that the abuse began when she was eight years old. Andrade testified that he felt that there was enough evidence to determine that a crime had been committed and contacted Child Protective Services (CPS).

### C. Interview with Francisco Lopez

CPS Investigator Francisco Lopez testified on direct examination that he was assigned to the case after CPS received reports from Chesney and Natalie and the San

---

CRIM. PROC. ANN. art. 38.072, § 2(a)(3) (West, Westlaw through 2013 3d C.S.).

3

Benito Police. On Sunday, October 3, 2011 (the day after C.T. first spoke to Chesney), Lopez and another CPS investigator went to Chesney and Natalie's home to interview C.T. Lopez testified that they would normally bring a child complainant for a forensic interview at Maggie's House, the Children's Advocacy Center, but it was closed that day. Lopez personally interviewed C.T. and made an audio recording of the interview, which we will refer to as the "Lopez Recording."

During the interview, C.T. confirmed that the abuse started when she was eight years old, that she had recently learned the meaning of the term "oral sex" from Chesney, that appellant had forced her to perform oral sex, and that appellant had performed oral sex on her. C.T. clarified to Lopez that she told Officer Andrade that he did not force her to perform oral sex because she did not know the meaning of the term until she spoke to Chesney after giving the statement. C.T. also described the specific appearance of appellant's genitalia, including whether his pubic hair was shaved or unshaved, that he had pimples on his thighs, and that she sometimes saw "red dots" on his genital area. Lopez questioned C.T.'s mother when she arrived to pick up C.T. and testified that C.T.'s mother gave a similar description of appellant's genitalia.

Immediately prior to Lopez's testimony, appellant's counsel orally moved for a continuance to review any documents prepared by Lopez during his investigation because the documents "could be pretty voluminous." The trial court overruled the motion as premature. At the beginning of cross-examination by appellant's counsel, Lopez confirmed that he had prepared an eight-page report of his investigation, that he used a copy of the report to refresh his memory prior to testifying, and that he had not provided the report to the State, the trial court, or appellant because it was confidential by law. *See*

4

TEX. FAM. CODE ANN. § 261.201 (West, Westlaw through 2013 3d C.S.). Appellant's counsel moved under Texas Rule of Evidence 615 that the court order Lopez to turn over the report and orally moved for a continuance to give him time to review the report before using it to cross-examine Lopez. *See* TEX. R. EVID. 615. The trial judge denied both motions. At the end of Lopez's testimony, appellant's counsel again requested the report. Appellant's counsel also filed a written motion for continuance and a motion for disclosure of confidential records. The trial judge never explicitly ruled on the motions but carried them through the trial. The trial judge also ordered the State to tender the CPS files generated in the case to the court under seal. After reviewing the records *in camera*, the trial judge disclosed a copy of Lopez's eight-page report to the defense and read two additional pages into the record.

### D. Lopez's Interview with B.F.

Lopez briefly interviewed B.F., C.T.'s younger sister, on the same day as his original interview with C.T. Lopez also made an audio recording of that interview. At trial, the State called B.F. as a witness. During the State's direct examination, B.F. denied that she had ever told Lopez that appellant and C.T. were alone "many times" in her parents' room with the door closed. The State offered into evidence a portion of the audio recording of Lopez's interview with B.F. that was inconsistent with this testimony. *See* TEX. R. EVID. 613. The trial court judge admitted that portion of the statement into evidence over appellant's objections. At the end of the State's examination, B.F. admitted that her mother had told her what to say during her trial testimony.

### E. C.T.'s Interview at Maggie's House

The day after the initial interviews, Lopez took C.T. for a forensic interview at

Maggie's House.  Lopez described C.T.'s interview, which we discuss in detail below, as containing more details, but consistent with C.T.'s prior statements.  Following the interview, Detective Manuel Cisneros decided to file charges against appellant.

### F.  C.T.'s Testimony

C.T. testified on direct examination that the first incident of abuse occurred when she was eight years old and appellant touched the surface of her vagina with his fingers.  She remembered at least one other incident of appellant doing similar acts around the same time period.  C.T. testified that the abuse escalated in "stages."  On subsequent occasions, appellant would "play with my nipples or my boobs.  He'd suck on them or he'd put his mouth to my vagina."  C.T. further testified that appellant also forced her to perform oral sex on him more than ten times.  She testified that appellant actually tried to insert his penis into her vagina on two occasions, in contrast to the single incident that she described to Natalie, Chesney, Officer Andrade, Lopez, and the interviewer at Maggie's House.  C.T. explained that at the time of her initial outcry, her "nerves were running very thin, and like, I was not thinking fully."

C.T. mentioned during direct examination that she gave a statement to Lopez prior to the interview at Maggie's House.  At the end of the State's direct examination, appellant objected and requested that the court disclose any statements C.T. gave to CPS.  After an *in camera* review of the sealed CPS files, the trial judge disclosed the existence of two audio files of C.T.'s interview with Lopez to all parties.  The trial judge denied appellant's motion for continuance but gave appellant's counsel time to listen to the recordings before proceeding with the trial.[5]  The State moved on redirect to introduce a portion of the video

---

[5] The audio files run approximately twenty-five minutes in total.

6

recording of C.T.'s interview at Maggie's House. The State argued that it was admissible to counteract a false impression of C.T.'s tendency to lie that was left in the jurors' minds by counsel's cross-examination. *See* TEX. R. EVID. 801(e)(1)(c). The trial court admitted that portion of the video over appellant's objections.

**G**. **Verdict and Sentence**

Following the close of evidence, the jury returned verdicts of guilty on all pending counts. Appellant opted for the trial judge to assess his punishment. The trial judge assessed concurrent sentences of fifty years' imprisonment on Count I and twenty years' imprisonment on each of the remaining counts. Appellant filed a motion for new trial, and the trial court denied it by written order. Appellant timely filed a notice of appeal.

## II. MOTIONS FOR CONTINUANCE

By his first issue, appellant argues that the trial court erred by denying his three motions for continuance: first, immediately prior to Lopez's testimony; second, at the beginning of his counsel's cross-examination of Lopez; and third, at the end of his cross-examination of Lopez. We disagree.

### A. Standard of Review and Applicable Law

We review the trial court's ruling on a motion for continuance for abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). Requests for a continuance after the trial has begun are expressly governed by the code of criminal procedure, which provides:

> A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.

7

TEX. CODE CRIM. PROC. ANN. art. 29.13 (West, Westlaw through 2013 3d C.S.). The motion must be in writing and fully state sufficient cause for the continuance. *Id*. art. 29.03 (West, Westlaw through 2013 3d C.S.). The motion must also be sworn to "by a person having personal knowledge of the facts relied on for the continuance." *Id.* art. 29.08 (West, Westlaw through 2013 3d C.S.); *see Williams v. State*, 356 S.W.3d 508, 521 (Tex. App.—Texarkana 2011, pet. ref'd). A motion for continuance that is not in writing and not sworn preserves nothing for review. *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999).

**B. Discussion**

Appellant's first and third motions were unwritten and unsworn and so did not preserve error for our review. *See id.* Appellant's second motion, although in writing and sworn to by counsel, was insufficient to demonstrate that a continuance was warranted. A motion for continuance must cite an unexpected occurrence that the applicant's counsel could not have anticipated by reasonable diligence and show that the "applicant is so taken by surprise that a fair trial cannot be had." TEX. CODE CRIM. PROC. ANN. art. 29.13. Appellant's motion cited the reason for the request, to review the CPS records, but did not attempt to show that the existence of the audio recording could not have been anticipated by reasonable diligence. The motion also does not explain why a fair trial could not be had without the continuance. *See id*; *Barney v. State*, 698 S.W.2d 114, 127 (Tex. Crim. App. 1985) (en banc) (holding that, under article 29.13, "it must appear to the satisfaction of the court that 'a fair trial cannot be had' before a continuance or postponement is warranted"). Consequently, the trial court did not abuse its discretion in denying the continuance. *See Gallo*, 239 S.W.3d at 764. We overrule appellant's first

8

issue.

### III. OBJECTION UNDER TEXAS RULE OF EVIDENCE 615

By his second issue, appellant argues that the trial court erred when it refused his motion under Texas Rule of Evidence 615 to direct the State to produce a copy of Lopez's report to assist appellant's counsel in cross-examination. We disagree.

#### A. Applicable Law and Standard of Review

The common-law *Gaskin* rule provided that, when a State's witness made a report or gave a statement prior to testifying, the defendant is entitled on timely request to inspect the report or statement and to use it for purposes of cross-examination and impeachment. *Cullen v. State*, 719 S.W.2d 195, 196 (Tex. Crim. App. 1986) (en banc) (citing *Gaskin v. State*, 172 TEX. CRIM. 7, 353 S.W.2d 467 (1961)). This rule is now codified in Texas Rule of Evidence 615, which provides:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and defendant's attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

TEX. R. EVID. 615. The rule defines a "statement" as "a written statement made by the witness that is signed or otherwise adopted or approved by the witness." *Id.* R. 615(f)(1). If the defendant timely moves for production of material covered by Texas Rule of Evidence 615, it is error for the trial court to deny production and access to it. *Keith v. State*, 916 S.W.2d 602, 606 (Tex. App.—Amarillo 1996, no pet.).

Section 261.201 of the Texas Family Code provides that "reports," among other materials, "used or developed" in an investigation of a report of child abuse or neglect made under chapter 261 are confidential and may not be released. TEX. FAM. CODE ANN.

9

§ 261.201(a).  A court may order the release of information made confidential under section 261.201 if the following conditions are met:  (1) a motion is filed requesting the release of the information; (2) notice of hearing has been served on the investigating agency and all interested parties; and (3) the court determines after the hearing and an *in camera* review of the requested information that disclosure of the requested information is essential to the administration of justice and is not likely to threaten the life or safety of (i) a child complainant, (ii) a person who made a report of alleged abuse, or (iii) any person who participated in an investigation of abuse or neglect or who provided care for the child. *Id.* § 261.201(b).

### B. Discussion

Appellant asserts that the trial court erred by refusing to order production of Lopez's report at the beginning of his trial counsel's cross-examination of Lopez as expressly required by the rule.  *See* TEX. R. EVID. 615.  The State responds that the trial court did not err by denying the motion because Lopez's report was protected under section 261.201 of the Texas Family Code, and appellant did not follow the proper procedure for gaining access to information protected by that section.  *See id.*; *see also* TEX. FAM. CODE ANN. § 261.201.  We agree with the State.

Appellant's counsel moved for disclosure of the report under Texas Rule of Evidence 615, but he did not mention Texas Family Code section 261.201 or attempt to comply with the procedure for releasing information classified as confidential under that section.  Because appellant did not attempt to comply at that time with the procedures for releasing it,[6] we hold the trial court did not err in overruling appellant's objection under

---

[6] Appellant's counsel later filed a Motion for Disclosure of Confidential Records seeking access to the entire CPS casefile, which we discuss below.  However, appellant does not mention that motion under

10

Texas Rule of Evidence 615. *See* TEX. R. EVID. 615. We overrule appellant's second issue.

## IV. *BRADY* VIOLATIONS

Appellant asserts in his third issue that the State violated its duty to disclose favorable and material information to appellant. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). We disagree.

### A. Applicable Law

Under United States Supreme Court precedent beginning with *Brady*, the State is required to disclose evidence known to it that is favorable or material to a defendant's guilt or punishment, whether or not the defendant requests it. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). This duty encompasses both impeachment as well as exculpatory evidence. *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). The good or bad faith of the prosecution is irrelevant. *Brady*, 373 U.S. at 87.

A defendant must show the following requirements to establish a *Brady* violation: (1) the State suppressed evidence; (2) the suppressed evidence is favorable to the defendant; and (3) the suppressed evidence is material. *Stickler*, 527 U.S. at 281–82; *accord Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). "Favorable" evidence for these purposes is any evidence that, if disclosed and used effectively, "may make the difference between conviction and acquittal." *Harm*, 183 S.W.3d at 406. Evidence is "material" for *Brady* purposes "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008) (internal

this issue.

11

quotations omitted).   A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*

The materiality prong incorporates a requirement that the defendant is prejudiced by the State's failure to disclose the evidence.   *Harm*, 183 S.W.3d at 406.   When information is disclosed mid-trial, the prejudice inquiry involves determining whether the disclosure came in time to make effective use of it at trial.  *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999).   "If the defendant received the material in time to use it effectively at trial, his conviction should not be reversed just because it was not disclosed as early as it might have and should have been."   *Id.*

## B. Discussion

Appellant asserts that the State's failure to disclose Lopez's report and the Lopez Recording meets the second prong of the test because "C.T. had given numerous statements and her credibility was important at the early stage of the trial."   Appellant reasons that Lopez's report and the Lopez Recording show a "definite distinction" between the content of C.T.'s original outcry statements and her statements during the interview at Maggie's House.   Appellant argues that he should have had access to the statements "to sufficiently develop cross-examination of C.T."[7]

We first address the second prong, the requirement that the suppressed evidence was favorable.  *See Harm*, 183 S.W.3d at 406.   Lopez's report and the recordings of the Lopez interview do reveal some inconsistencies between C.T.'s original statements to

---

[7] Appellant also argues that the late disclosure of the audio recording of B.F.'s interview with Lopez was *Brady* error.  We hold that appellant has waived error, if any, by failing to request a continuance when the State moved to introduce the recording.  *See Perez v. State*, 414 S.W.3d 784, 790 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding that failure to request a continuance waives *Brady* error); *Young v. State*, 183 S.W.3d 699, 706 (Tex. App.—Tyler 2005, pet. ref'd) (same).

12

Natalie and Chesney, Office Andrade, Lopez, and her statement at Maggie's House. For example, on the Lopez Recording, C.T. describes an end date for the abuse closer to the date of her outcry than the end date in her statement to the interviewer at Maggie's House. C.T. also told the Maggie's House interviewer that appellant forced her to perform oral sex on him more than five times, but did not give a specific number of times to Chesney or Natalie. C.T. also told the Maggie's House interviewer that appellant attempted to vaginally penetrate her twice, while she told Lopez that it occurred only once. However, the majority of C.T.'s statements on the Lopez Recording are consistent with C.T.'s other statements; she consistently described the type of acts appellant would force her to perform and the type of acts appellant would perform on her. C.T.'s statements are also consistent as to the abuse escalating in stages from vaginal touching, to forcing C.T. to perform oral sex and receiving oral sex from appellant, to one or more incidents where appellant allegedly tried to penetrate her vaginally with his penis. Moreover, during the Lopez Recording, C.T. explained some of the discrepancies: she told Officer Andrade that appellant did not force her to perform oral sex because she did not know the meaning of the term at the time of the interview. Appellant also asserts that C.T.'s description in the Lopez Recording of the identifying features of appellant's genital area "became an issue relating to [C.T.'s] credibility," but Lopez testified that the description of appellant's genital area given by C.T.'s mother was similar to C.T.'s statement. The Lopez Recording and Lopez's report, if anything, do more to demonstrate the consistency of C.T.'s statements than to cast doubt on them.

Based on the foregoing, we conclude that the evidence was not favorable to appellant. Even assuming, *arguendo*, that the second prong is met, we conclude that the

13

evidence is not material because there is not a reasonable probability that the result of the trial would have been different if the evidence had been disclosed earlier. *See Ex parte Reed*, 271 S.W.3d at 727. When *Brady* evidence is disclosed during the trial, we inquire whether the defendant was able to effectively use the material despite the delay. *See Little*, 991 S.W.2d at 866. Appellant argues that "it is unclear" how his counsel was supposed to use Lopez's report, given that it was only provided at the conclusion of Lopez's testimony. In fact, after the end of his cross-examination and before recessing for the day, the judge asked for Lopez's phone number and informed him that he was not released from his subpoena and subject to recall the next day. The trial court expressly afforded appellant's counsel an opportunity to continue cross-examination of Lopez the next day on the basis of the report. If appellant's counsel wanted to use the report to effectively cross-examine Lopez, he had the opportunity to do so. Appellant does not explain why he did not take the opportunity to recall and cross-examine Lopez the next morning, or why he needed to use the information earlier in the cross-examination for it to be effective.

Appellant also argues that the audio recordings of C.T.'s interview with Lopez were material. When denying appellant's third request for a continuance, this time on the basis of a need to review the recordings, the trial judge stated on the record that there was no substantive detail in the Lopez Recording that was not included in Lopez's report, which had been disclosed earlier in the trial.[8] After reviewing both pieces of evidence, we agree with the trial judge. The substance of the report is the same as the substance of the Lopez Recording. Moreover, despite the delayed disclosure, appellant's counsel's cross-

---

[8] Two witnesses testified between the disclosure of the report and the beginning of the State's direct examination of C.T.

14

examination of C.T. fills over seventy pages of the reporter's record and dwells almost entirely on inconsistencies in C.T.'s multiple statements. Appellant does not explain how a continuance would have enabled his counsel to more effectively use the recordings in his cross-examination of C.T.

In sum, we conclude that appellant is unable to demonstrate that he was prejudiced by the late disclosure of Lopez's report and the Lopez Recording. Appellant is thus unable to demonstrate the third prong of a *Brady* claim. *See Little*, 991 S.W.2d at 866. We overrule appellant's third issue.

## V. *BRADY* AND *SECTION* 261.201

By his fourth issue, appellant questions the relationship between the State's duty to disclose all favorable and material information under *Brady* and the confidentiality requirements of Texas Family Code section 261.201. We understand appellant as asserting two arguments under this issue. Appellant's first argument is that:

> The balancing test as to whether CPS documents should be turned over to the Appellant should not have been placed on the trial court or this Court of Appeals. The State of Texas should play from a point of strength and provide every defendant with the information they intend to use to convict them. The State hid behind the premise that CPS records are privileged information.

Appellant's second argument is that the trial court abused its discretion by not timely disclosing the evidence that was the subject of his third issue.

We reject appellant's argument that it was inappropriate for the trial court to conduct the Texas Family Code section 261.201(b)(3) balancing test to determine whether to disclose material that appellant viewed as *Brady* evidence. The conflict that can arise between the State's need to keep information related to child abuse investigations confidential with a defendant's need for a fair trial is well recognized. The

United States Supreme Court confronted the problem in *Pennsylvania v. Ritchie*, where the Supreme Court of Pennsylvania held that the appropriate method of assessing a claim that information made confidential by statute is material under *Brady* "was to grant [the defendant] full access to the disputed information, regardless of the State's interest in confidentiality." 480 U.S. 39, 59 (1987). The United States Supreme Court rejected that conclusion, holding that the defendant's interest in "ensuring a fair trial can be protected fully by requiring that the [state child protection agency] files be submitted only to the trial court for *in camera* review." *Id.* at 60. Addressing a similar Texas statute, which made information given to Crime Stoppers confidential, the Texas Court of Criminal Appeals held that the defendant had the right to require the requested information be tendered to the trial court for an *in camera* review, but rejected the argument that the defendant should be accorded unlimited access to that information. *Thomas v. State*, 837 S.W.2d 106, 113–14 (Tex. Crim. App. 1992) (en banc). The *Thomas* Court held that "both the State's interest and the defendant's interest can be served by providing that crime stoppers information should be inspected by the trial court *in camera*." *Id.* at 114.

Texas Family Code section 261.201 provides for exactly the type of procedure approved in *Ritchie* and *Thomas*: an *in camera* inspection of the material by the trial judge, and an ongoing duty to disclose any confidential material that is relevant or becomes relevant during the course of the trial. *See Ritchie*, 480 U.S. at 60; *see also* TEX. FAM. CODE ANN. § 261.201. Appellant's request that this Court "instruct Judges, and particularly in Appellant's case, that the CPS Records were essential to the administration of justice" runs directly contrary to the balance struck by both the United States Supreme Court and the Texas Court of Criminal Appeals. Bound by that precedent, we reject

16

appellant's argument. *See Ritchie*, 480 U.S. at 60; *Thomas*, 837 S.W.2d at 114.

Regarding appellant's second argument, he asserts that "[t]he trial court abused his discretion in failing to timely turn over the audio tapes and documents to the Appellant. The Appellant was denied the effective assistance of counsel." The Texas Rules of Appellate Procedure require that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Appellant does not explain his argument further or cite to any authorities except for the standard of review. We overrule appellant's second argument as inadequately briefed. *See id.* We overrule appellant's fourth issue.

## VI. IMPEACHMENT OF B.F.

Appellant argues in his fifth issue that the State did not lay the proper predicate before impeaching B.F. with her prior inconsistent statement. We disagree.

### A. Standard of Review & Applicable Law

We review a trial court's decision to admit evidence for a clear abuse of discretion, and we will not reverse as long as the judge's decision lies within the zone of reasonable disagreement. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). We view the evidence in the light most favorable to the trial court's decision to admit the statement. *Klein v. State*, 273 S.W.3d 297, 304 (Tex. Crim. App. 2008).

Texas Rule of Evidence 613(a) governs the impeachment of witnesses with prior inconsistent statements, and provides in pertinent part:

> In examining a witness concerning a prior inconsistent statement made by the witness, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of, such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement.

17

TEX. R. EVID. 613(a); *Harris v. State*, 152 S.W.3d 786, 795 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *Flores v. State*, 48 S.W.3d 397, 404 (Tex. App.—Waco 2001, pet. ref'd). The trial court should not admit the prior inconsistent statement unless the proper predicate has been laid. *Harris*, 152 S.W.3d at 795 (citing *Moore v. State*, 652 S.W.2d 411, 413 (Tex. Crim. App. 1983) (en banc)).

**B. Discussion**

Appellant argues that the recording of Lopez's interview with B.F. was improperly admitted because the State did not give B.F. the chance to "either admit or deny the testimony." The following exchange occurred between the State and B.F. before the State offered the audio recording into evidence:

[State]: That's okay. Was there ever any time that your dad and [C.T.] were alone?

[B.F.]: No.

[State]: No? And it's okay if you don't but I want to try to refresh your memory, remember, okay? Do you remember talking with someone named Frank from Child Protective Services back in October at the St. John's house?

[B.F.]: Yes.

[State]: Yes? And do you remember talking to him and he was asking you questions?

[B.F.]: Yes.

[State]: And do you remember that he asked you if you had ever seen your dad and [C.T.] alone. Do you remember that?

[B.F.]: Yes.

[State]: And do you remember that you told him that you had seen them alone?

18

[B.F.]:         I didn't say that.

[State]:        You didn't say that?  Do you remember that you told him that
                you saw them alone a lot of times?

[B.F.]:         No.

[State]:        You didn't say that?  Do you remember telling him that you
                saw them alone in your dad's bedroom?

[B.F.]:         No.

[State]:        And that the door was closed?

[B.F.]:         No.

[State]:        Do you remember saying that you and your brother would be
                watching television when that happened?

[B.F.]:         No.

In the above exchange, the State informed B.F. of the substance of the inconsistent statement, the time and place in which it was made, and gave her an opportunity to admit or deny that she made the statement.  *See* TEX. R. EVID. 613(a). Once B.F. denied that she told Lopez during the interview on October 3, 2011 that appellant and C.T. were frequently alone together, the State met all of the requirements of Texas Rule of Evidence 613(a).  *See id.*  We overrule appellant's fifth issue.

### VII. LIMITING INSTRUCTION ON IMPEACHMENT EVIDENCE

Appellant argues by his sixth issue that the court erred by denying his request for a limiting instruction on the audio recording of B.F.'s interview with Lopez.  We disagree.

**A.  Applicable Law**

Texas Rule of Evidence 105 provides in pertinent part:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and

instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

TEX. R. EVID. 105(a). The party opposing the evidence must request a limiting instruction when the trial court admits the evidence or else it is admitted "for all purposes." *Arrington v. State*, 451 S.W.3d 834, 842 (Tex. Crim. App. 2015); *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001). The reason for requiring a contemporaneous request for a limiting instruction is that "[a]llowing the jury to consider evidence for all purposes and then telling them to consider that same evidence for a limited purpose only is asking a jury to do the impossible." *Hammock*, 46 S.W.3d at 894.

### B. Discussion

When the State offered the recording of B.F.'s interview with Lopez into evidence, appellant objected on the basis of relevance, optional completeness, and improper impeachment of a witness, but, like the defendant in *Hammock*, did not request a limiting instruction until the charge conference. *See id.* at 895. Appellant asserts that his objection on the basis of improper impeachment was sufficient to put the trial court on notice that a limiting instruction should be given, but provides no support for this proposition. Appellant, as the party opposing the evidence, had the burden to request a limiting instruction at the time the trial court admitted the evidence. *See Garcia v. State*, 887 S.W.2d 862, 878 (Tex. Crim. App. 1994) (en banc), *abrogated in part on other grounds, Hammock*, 46 S.W.3d at 893; *accord Reeves v. State*, 99 S.W.3d 657, 658 (Tex. App.—Waco 2003, pet. ref'd); *Arana v. State*, 1 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Because appellant did not request a limiting instruction at the first opportunity, we hold that the court did not err in not giving the instruction. *See*

20

*Arrington*, 451 S.W.3d at 842; *Hammock*, 46 S.W.3d at 895. We overrule appellant's sixth issue.

## VIII. ADMISSION OF VIDEO FROM MAGGIE'S HOUSE INTERVIEW

By his seventh issue, appellant argues the trial court erred in admitting the video recording of C.T.'s interview at Maggie's House because it did not meet the requirements for admission of prior consistent statements of a witness. *See* TEX. R. EVID. 801(e)(1)(c). We disagree.

### A. Standard of Review and Applicable Law

We review a trial court's decision to admit evidence for a clear abuse of discretion, and we will not reverse as long as the judge's decision lies within the zone of reasonable disagreement. *McCarty*, 257 S.W.3d at 239. We view the evidence in the light most favorable to the trial court's decision. *See Klein*, 273 S.W.3d at 304.

A prior consistent statement of a witness is generally inadmissible except as provided by Texas Rule of Evidence 801. TEX. R. EVID. 613(c). Under that rule, a prior consistent statement of a witness is admissible if (1) the witness has testified and is subject to cross-examination, and (2) the statement is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." TEX. R. EVID. 801(e)(1)(c). The trial court has substantial discretion to admit a prior consistent statement even if there has been "only a suggestion of conscious alteration or fabrication." *Hammons v. State*, 239 S.W.3d 798, 804–05 (Tex. Crim. App. 2007) (internal quotation marks omitted). The rule does not permit courts to admit evidence that would otherwise be hearsay whenever a witness's memory or credibility is challenged, but there is no bright-line rule to distinguish

between a general challenge to the witness's memory or credibility and a suggestion of conscious alteration or fabrication.  *Id.* at 805.  The trial court should determine if the cross-examiner's questions or the tenor of the questioning would "reasonably imply an intent by the witness to fabricate."  *Id.*  The implication may be subtle and may come through the "tone, tenor, and demeanor" of the questioning or the cross-examiner.  *Id.* at 808.  Reviewing courts, "in assessing whether the cross-examination of a witness makes an *implied* charge of recent fabrication or improper motive, should focus on the purpose of the impeaching party, the surrounding circumstances, and the interpretation put on them by the [trial] court."  *Id.* (brackets and emphasis in the original, internal quotation marks omitted).

**B. Discussion**

Two exchanges occurred between appellant's counsel and C.T. during cross-examination.  The first exchange referenced inconsistencies between C.T.'s previous statements and those she made during her interview at Maggie's House regarding the circumstances surrounding the first incident of abuse:

[Defense]:    You said you were eight years old?

[C.T.]:    Yes, sir.

[Defense]:    The first time it occurred, right?

[C.T.]:    Yes, sir.

[Defense]:    You also said it happened in Pittsburgh, Texas?

[C.T.]:    Yes, sir.

[Defense]:    Okay. You said you were in the third grade?

[C.T.]:    Yes, sir.

22

[Defense]: Okay. It's also true that you said that you're alleging that you were touched on your vagina with the fingers; is that right?

[C.T.]: Yes, sir.

[Defense]: So you are saying that this happened before your grandmother [name omitted] was going to pick you up for a performance; is that right?

[C.T.]: Yes, sir.

[Defense]: Okay. And after this occurred your grandmother picked you up; is that right?

[C.T.]: Yes, sir.

[Defense]: [C.T.], isn't it true that you told the interviewer Monica Galvan at Maggie's House that that was not the first time it occurred? Didn't you give her a different account of the first time it occurred?

[C.T.]: I corrected myself at the end of the interview.

[Defense]: You corrected yourself at the end of the interview?

[C.T.]: Yes, sir.

[Defense]: So that would be in that interview if you corrected yourself at the end of that interview, it would be in that interview that the state has; is that correct?

[C.T.]: Yes, sir.

[Defense]: Isn't it true that you told the interviewer at Maggie's House the first time it happened was in fact when you did come home sick one day from school?

[C.T.]: Yes, sir.

[Defense]: Okay. And you'd agree those are two different statements, right? Two different recollections of the first time it occurred?

[C.T.]: Yes, sir. But I did correct myself at the end of that video

23

The second exchange referenced inconsistencies between C.T.'s testimony and her statements at Maggie's House regarding the time period in which the abuse ceased:

[Defense]:    All right. You also talked that he would also touch your breasts; is that right?

[C.T.]:    Yes, sir.

[Defense]:    What would he do when he would touch your breast[s]? What happened then?

[C.T.]:    He just moved them around or he'd grab his thumb around my nipples or he'd suck on them.

[Defense]:    When was the last time that occurred that he ever did that? Do you remember?

[C.T.]:    I don't have an exact date. I don't remember exactly when.

[Defense]:    Did you ever give an estimation to anyone as to when that may have stopped?

[C.T.]:    No, sir.

[Defense]:    You never told the interviewer at Monica's House when it stopped, at Maggie's House?

[C.T.]:    Not that I can remember.

[Defense]:    You never told her that it stopped before July 4th?

[C.T.]:    Not that I can remember.

As appellant reiterated multiple times on appeal, his trial counsel's overriding strategy was to highlight the inconsistencies in C.T.'s various statements to Chesney, Natalie, Officer Andrade, Lopez, the Maggie's House interviewer, and her testimony at trial. Trial counsel's cross-examination of C.T. dwelt almost entirely on various inconsistencies in her statements. In the selections we quoted above, counsel identified two inconsistencies between the Maggie's House interview and other statements: C.T.'s

24

description of the first incident of abuse and the time period in which it ceased. The trial court evidently interpreted the "tone, tenor, and demeanor" of the questioning as raising a charge of fabrication by commenting that appellant "called the issue of consistency or inconsistency into issue." Thus, the purpose of the impeaching party, the surrounding circumstances, and the trial court's interpretation of the questioning all support the trial court's ruling. *See Hammons*, 239 S.W.3d at 808. Deferring to the trial court's "substantial discretion" to admit prior consistent statements after determining that the witness's credibility has been challenged, we conclude that the trial court did not err in admitting the recording. *See id.* at 804–05

Appellant presents an additional argument under this issue: even if the State's theory is correct, the tape should not have been admitted into evidence because the State did not segregate the admissible portions of the interview from those containing inadmissible statements. Appellant objected on hearsay grounds, but he did not request that the State segregate the inadmissible portions, if any, from what was admissible. Appellant is correct in his argument that Texas Court of Criminal Appeals precedent is that if admissible and inadmissible statements are not segregated the trial judge "may properly exclude all of the statements," but the Court held in the same case cited by appellant that the "trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part." *Willover v. State*, 70 S.W.3d 841, 847 (Tex. Crim. App. 2002) (internal quotation marks omitted); *accord Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009); *Reyna v. State*, 168 S.W.3d 173, 178 (Tex. Crim. App. 2005). Following *Willover*, we hold that the trial court did not abuse its

25

discretion in admitting the entire portion of the interview because appellant did not request that the inadmissible and admissible portions of the recording be segregated or specify which portions were inadmissible. *See Whitaker*, 286 S.W.3d at 369; *Reyna*, 168 S.W.3d at 178; *Willover*, 70 S.W.3d at 847. We overrule appellant's seventh issue.

## IX. WITNESS COMMENTARY

By his eighth issue, appellant argues that the State elicited improper opinion testimony from Chesney, Lopez, Detective Cisneros, Sonia Eddleman,[9] and C.T.'s biological father on the credibility of C.T.'s allegations. We disagree.

To preserve error for appellate review, the complaining party must make a timely, specific request or objection and obtain an adverse ruling from the trial court. TEX. R. APP. P. 33.1(a); *Brewer v. State*, 367 S.W.3d 251, 253 (Tex. Crim. App. 2012). Failure to object to the admission of evidence waives any complaint on appeal. *Reyes v. State*, 84 S.W.3d 633, 638 (Tex. Crim. App. 2002). Our review of the record shows that appellant did not object to any of the testimony he now references in his brief. Appellant has not directed us to any place in the record where he objected. Accordingly, we conclude that appellant has waived this issue. TEX. R. APP. P. 33.1(a); *see Brewer*, 367 S.W.3d at 253; *Reyes*, 84 S.W.3d at 638. We overrule appellant's eighth issue.

## X. TESTIMONY OF JUSTICE OF THE PEACE DAVID GARZA

Appellant argues by his ninth issue that the trial court erred by refusing to present Justice of the Peace David Garza as a witness. Appellant's counsel requested on the record that the court permit him to call Judge Garza because he wanted to solicit testimony regarding why Judge Garza found a probable-cause affidavit submitted by

---

[9] Sonia Eddleman, a trained Sexual Assault Nurse Examiner, did not personally examine C.T., but testified to the contents of C.T.'s medical records after reviewing them.

Detective Cisneros to be insufficient to justify issuing a warrant.  The trial judge stated that he would not allow Judge Garza to be subject to subpoena "to testify as to his mental process on granting or denying anything."  Appellant asserts that the court's ruling violated his right to compulsory process to obtain witnesses under the state and federal constitutions.  We disagree.

## A. Standard of Review and Applicable Law

Criminal defendants have a right under the state and federal constitutions to compulsory process to obtain witnesses.  *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also Williams v. State*, 273 S.W.3d 200, 232 (Tex. Crim. App. 2008).  But that right is not absolute.  *Tope v. State*, 429 S.W.3d 75, 83 (Tex. App.—Houston [1st Dist.] 2014, no pet.).  We review limitations on the right to compulsory process for an abuse of discretion.  *Lawal v. State*, 368 S.W.3d 876, 885 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Drew v. State*, 743 S.W.2d 207, 225 n. 11 (Tex. Crim. App. 1987) (en banc)).

## B. Discussion

As a general rule, judges may testify in proceedings over which they are not presiding if they are competent to do so.[10]  *Hensarling v. State*, 829 S.W.2d 168, 171 (Tex. Crim. App. 1992) (en banc).  However, courts have refused to issue subpoenas for judges to testify about the mental processes by which they reached a decision "absent extreme and extraordinary circumstances."  *Gary W. v. State of La., Dept. of Health &*

---

[10] A judge may not testify in a proceeding over which the judge is presiding.  TEX. R. EVID. 605; *Hensarling v. State*, 829 S.W.2d 168, 171 (Tex. Crim. App. 1992) (en banc); *State v. Stewart*, 282 S.W.3d 729, 736 (Tex. App.—Austin 2009, no pet.).  The Texas Supreme Court has held that that this rule applies not only to judges but also to all persons performing judicial functions.  *Bradley v. State ex rel. White*, 990 S.W.2d 245, 249 (Tex. 1999).

*Human Res.*, 861 F.2d 1366, 1369 (5th Cir. 1988) (internal quotation marks omitted). The

Fifth Circuit has explained that permitting "such an examination of a judge would be

destructive of judicial responsibility" because:

> While a judge enjoys no special privilege from being subpoenaed as a witness, it is imperative when he is called to testify as to action taken in his judicial capacity, to carefully scrutinize the grounds set forth for requiring his testimony. Should a judge be vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to frivolous attacks upon its dignity and integrity, and interruption of its ordinary and proper functioning.

*United States v. Anderson*, 560 F.3d 275, 282 (5th Cir. 2009) (quoting *Gary W.*, 861 F.2d

at 1369); *see United States v. Morgan*, 313 U.S. 409, 422 (1941) (suggesting that a judge

cannot be required to testify regarding his mental impressions of a case). The few Texas

courts to address cases where a non-presiding judge was called to testify have all

recognized the federal "mental processes" rule or have spoken of it with approval.

*Thomas v. Walker*, 860 S.W.2d 579, 582 (Tex. App.—Waco 1993, orig. proceeding)

(citing *Morgan*, 313 U.S. at 421); *Tate v. State*, 834 S.W.2d 566, 570 (Tex. App.—Houston

[1st Dist.] 1992, pet. ref'd). When confronted with an appeal challenging an order

quashing a subpoena of a visiting judge who presided over a portion of the defendant's

case, the First Court of Appeals reasoned as follows:

> Texas law has not established circumstances or conditions under which a judicial official might properly be compelled to articulate his reasons for a decision in a particular case, and we do not propose to state such a rule here. However, we conclude that if such a rule were to be established, the better rule would require, at the very least, a threshold showing of improper conduct on the part of the judge that would justify compelling him to testify.

*Tate*, 834 S.W.2d at 570.

We find the *Tate* Court's reasoning to be sound and apply it to the situation before

us. Texas law has not established under what circumstances or conditions a non-

presiding judge or judicial officer may be called to testify about their mental processes, but if we were to establish such a rule, it would at least require a threshold showing of improper conduct on the part of the judge. *See id.*; *Walker*, 860 S.W.2d at 582 (requiring a threshold showing of improper conduct on the part of a judge to justify requiring the judge to testify regarding his mental processes); *see also Sims v. Fitzpatrick*, 288 S.W.3d 93, 102 n.5 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Tate* and noting that even if appellants had preserved their general complaint that the assigned judges erred in quashing subpoenas issued to the trial judge, they still would have to show the existence of extraordinary circumstances). In this case, appellant has made no showing of improper conduct on the part of Judge Garza or shown any other extraordinary circumstance that would justify requiring him to testify. Applying the reasoning of *Tate*, we hold that the trial court did not abuse its discretion in refusing to permit appellant to call Judge Garza as a witness. *See Tate*, 834 S.W.2d at 570. We overrule appellant's ninth issue.

## XI. OBJECTIONS UNDER TEXAS RULES OF EVIDENCE 402/403/404

Appellant argues in his tenth, eleventh, and twelfth issues that the trial court committed reversible error by overruling his objections under Texas Rules of Evidence 402, 403, and 404 to Natalie's testimony that she warned Chesney not to be in the pool with appellant because he "acted like a teenage boy and not like a dad in the pool with the girls."

### A. Standard of Review and Applicable Law

We review a trial court's decision to admit evidence for a clear abuse of discretion, not reversing so long as the judge's decision lies within the zone of reasonable

29

disagreement. *McCarty*, 257 S.W.3d at 239. We will uphold the ruling if it is correct on any applicable theory of law even if the trial court relied on an incorrect reason for reaching its decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

**B. Discussion**

The following exchange occurred during the State's redirect examination of Natalie:

[State]:     And defense counsel was talking with you about how the defendant would come over to your house. You said that he would spend time outside, and you also said that occasionally when he did [come] into your house you were there, correct? And defense counsel [*sic*] said that stated you must be okay with him being around your children. Is that a correct statement?

[Natalie]:   I'm really careful about who's around my kids. Like did I have them babysit or babysit my children, to [?]

[State]:     Would you leave your kids alone with him?

[Natalie]:   No.

[State]:     Did they ever stay alone with him?

[Natalie]:   No.

[State]:     Did you ever warn your children?

[Natalie]:   Yes. I told my daughter to—

[Defense]:   Objection, Your Honor, relevance.

[State]:     Your Honor, Defense counsel made it clear—

[Trial Judge]: I'm going to overrule that objection.

[State]:     You can answer.

[Natalie]:   I just told my daughter not to be alone with [Appellant] and especially, well, I told her never to be in the swimming pool with him.

30

Appellant's counsel requested to approach the bench. After a bench conference off the record, the trial judge held a hearing outside of the presence of the jury to consider appellant's renewed objections.[11] At the hearing, Natalie testified that her full answer to the State's question would have been that she "had seen inappropriate behavior between him and other girls, and between him and my daughter. Just like you would see from a teen-age boy trying to accidentally cop a feel only he's a dad." The trial judge overruled appellant's objections but stated that he would allow the State "to go into it very briefly, but only very briefly." The trial judge also instructed that Natalie should not state that appellant would try to "cop a feel." The State responded that it would "not go beyond what has already been said." Natalie testified in the presence of the jury that she did not want Chesney to be in the pool with appellant because he "acted like a teen-age boy and not like a dad in the pool with the girls." Natalie further testified that she thought this was "very inappropriate behavior."

Appellant argues that the court's ruling was error, but we conclude that the error, if any, was harmless. We review the erroneous admission of evidence concerning extraneous offenses or bad acts for harm under Texas Rule of Appellate Procedure 44.2(b). *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007); *see* TEX. R. APP. P. 44.2(b). Under this standard, we must disregard the error if, after examining the record as a whole, we have come to a "fair assurance" that the error did not affect appellant's

---

[11] Texas Rule of Appellate Procedure 33.1 requires a timely and specific objection to appear in the record. *See Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999) (en banc) (citing TEX. R. APP. P. 33.1). Appellant did not renew his objections on the record. However, during the hearing, after Natalie answered the judge's question regarding what her testimony would have been had appellant's counsel not asked to approach, counsel responded: "Judge, that's totally [inadmissible] under [Texas Rules of Evidence] 402, 403, and 404." We will treat appellant's counsel's statement as a further renewal of his objections that is sufficient to preserve error. *See* TEX. R. APP. P. 33.1.

31

substantial rights, *see* Tᴇx. R. Aᴘᴘ. P. 44.2, because it did not influence the jury's verdict or had but a slight effect. *Casey*, 215 S.W.3d at 855. In assessing the likelihood that the jury's decision was adversely affected by the error, we pay particular attention to factors such as the testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it may be considered in connection with other evidence in the case. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). We may also consider the jury instructions, the State's theories, any defensive theories, closing arguments, voir dire, and the State's emphasis on the error. *Id.* at 518–19.

After examining the record of the trial as a whole, we conclude that the error, if any, in admitting this part of Natalie's testimony did not have a substantial and injurious effect or influence in determining the jury's verdict. First, the jury heard substantial testimony from Chesney, Natalie, and C.T. regarding appellant's actions. Second, neither the State nor appellant emphasized this portion of Natalie's testimony. Third, the alleged error did not affect appellant's defensive theory, which was to call into question the truthfulness of C.T.'s statements as a whole. Given the miniscule part that Natalie's testimony played in the State's case and the State's lack of emphasis on it, the jury likely gave it little weight in comparison to the other evidence before it. *See id.* at 518. Based on the whole record of the trial, if there was an error in admitting this portion of Natalie's testimony, it did not have a substantial or injurious effect or influence in determining the jury's verdict. *See Casey*, 215 S.W.3d at 855. We overrule appellant's tenth, eleventh, and twelfth issues.

32

## XII. COMMENTS OF THE TRIAL JUDGE AND PROSECUTOR

By his thirteenth and fourteenth issues, appellant argues that the trial judge and the State committed fundamental error by making improper comments during voir dire. To preserve a complaint of improper voir dire for appellate review, a party must make a timely and specific objection and receive an adverse ruling from the trial court. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); TEX. R. APP. P. 33.1. Here, because appellant did not object, he has waived his complaint on appeal except for fundamental error. *See Archie*, 221 S.W.3d at 699; *McLean v. State*, 312 S.W.3d 912, 915 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

### A. Standard for Fundamental Error

The applicable test for determining whether an error during voir dire is fundamental, and therefore may be raised for the first time on appeal, is whether the error involves a violation of a right that is "waivable only" or a denial of an absolute, systemic requirement. *Aldrich v. State*, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003). This Court has held in the past that the right to an impartial judge is an absolute, systemic requirement that may be raised for the first time on appeal if the judge's comments are "so egregious as to deem the judge biased." *Hernandez v. State*, 268 S.W.3d 176, 185–86 (Tex. App.—Corpus Christi 2008, no pet.).

### B. Discussion

Appellant argues here that the trial judge commented on the evidence and shifted the burden of proof by saying in reference to the State's burden that: "[i]t's not a problem. You wouldn't be here if they didn't think they could prove it . . . ." However, we evaluate a judge's comments in the context of the record as a whole. *See Lopez v. State*, 415

33

S.W.3d 495, 498 (Tex. App.—San Antonio 2013, no pet.). The trial judge's full remarks are as follows:

> [The prosecutors] have the burden of proving the guilt and that burden never switches. It's a burden that they welcome. It's not a problem. You wouldn't be here if they didn't think they could prove it, however, whether they prove it or not is something that you must be satisfied beyond a reasonable doubt.

Read in context, the trial judge's remarks did not shift the burden of proof away from the State. The trial judge specifically reiterated that the State bears the burden of proof and that the jury is the sole judge of whether the State succeeded in proving its case beyond a reasonable doubt. We hold that appellant has not demonstrated fundamental error because he has not shown that the judge's comments were so egregious as to deem him biased. *See Hernandez*, 268 S.W.3d at 185–86.

With regard to the prosecutor's comments, appellant has not directed us to any authority that improper arguments or comments during voir dire by a party, as opposed to the trial judge, rise to the level of fundamental error. However, by arguing the State shifted the burden of proof, appellant's argument could be interpreted as going to the absolute, systemic requirement that a person may only be found guilty of an offense if a rational trier of fact finds sufficient evidence to prove all of the elements of the offense beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 362–64 (1970). Assuming, without deciding, that arguments by the State during voir dire shifting the burden of proof may rise to the level of fundamental error, we will address appellant's claims that the State's comments shifted the burden of proof to appellant in the interests of justice.[12]

---

[12] The Amarillo Court adopted this approach when faced with a similar claim. *See Huff v. State*, No. 07-10-00174-CR, 2010 WL 4828491, at *3 (Tex. App.—Amarillo Nov. 29, 2010, no pet.) (mem. op., not designated for publication).

Appellant cites the following portions of the State's voir dire in support of his argument that the State shifted the burden of proof to appellant:

Without you our system would fall apart.  The bottom line is we can have a case and it can have law enforcement that goes out to the scene, there can be child protective services involved, we can have forensic interviewers, we can have medical examiners, we can have prosecutors, we can have investigators, but it wouldn't be anything without you because at the end of the day we can bring the case to you that we believe we can prove beyond a reasonable doubt but if you guys don't go there with us, if you don't sit and listen to it, we've all done it in vain.

Shortly afterwards, during voir dire, the prosecutor stated:

Sexual abuse of children is a very conflicting topic.  It's polarizing. People don't want to hear about it.  Raise your card if you know right now you don't want to hear about it. So almost everybody.  Raise them high.  Keep them up please, 2, 3, 4, 5, 8, 9, 15, 16, 17, 18, 19 and it goes on and on and on. The truth is I don't blame you.  When I started as a prosecutor, I didn't want to hear about it either.  But the truth is if everybody had a strong reaction to child abuse didn't sit on jury panels, if that was a reason for you to be excused from jury duty today, then either we wouldn't be able to have these trials because there wouldn't be anybody to hear them or the people, worse, the people that heard them would be people who didn't get emotional about child abuse and what a tragedy that would be.

In the first quoted portion of voir dire, the State emphasized that the role of the jury is important and that the State believed that it could carry its burden of proving its case beyond a reasonable doubt.  Before voir dire began, the trial judge emphasized that the burden of proof rests with the State to prove all elements of the charged offenses beyond a reasonable doubt, and the jury charge reflected that fundamental requirement.  In the second quoted portion, read in context, the prosecutor merely mentions how uncomfortable many people feel at the thought of sexual abuse of children and asks the members of the venire to refrain from seeking not to serve because they might feel uncomfortable hearing the evidence in this case.  We find nothing in either argument that shifts the burden of proof to the defense or asks jurors to convict on the basis of the jurors'

35

emotional repugnance for child abuse rather than the evidence presented in the State's case. We hold that State's comments do not rise to the level of fundamental error. *See Aldirch*, 104 S.W.3d at 895. We overrule appellant's thirteenth and fourteenth issues.

## XIII. CUMULATIVE ERROR

By his fifteenth issue, appellant argues that the cumulative effect of all of the errors raised in his other issues requires reversal. The Texas Court of Criminal Appeals has observed that "[i]t is conceivable that a number of errors may be found harmful in their cumulative effect," but there is no authority that "non-errors may in their cumulative effect cause error." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (en banc). Because we have found no error in all but one of appellant's issues and here concluded that that error, if any, was harmless, there is no cumulative error requiring reversal. *See id.*; *Gallegos v. State*, 340 S.W.3d 797, 805 (Tex. App.—San Antonio 2011, no pet.) (holding that there was no cumulative error requiring reversal when the court of appeals overruled all but one of the appellant's other issues). We overrule appellant's fifteenth issue.

## XIV. CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of April, 2015.

Print this page

# Case # PD-0598-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 06/23/2015 02:25:17 PM |
| Case Number | PD-0598-15 |
| Case Description | |
| Assigned to Judge | |
| Attorney | Douglas Pettit |
| Firm Name | Douglas Pettit |
| Filed By | Douglas Pettit |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Douglas H. Pettit |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | |
| Order # | |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition for Discretionary Review |
| Reference Number | 676614 |
| Comments | |
| Status | Rejected |

### Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

### Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 06/25/2015 04:22:57 | The petition for discretionary review does not contain a certification of compliance with T.R.A.P. 9.4(i)(3). The petition for discretionary review does not contain the |

PM  identity of Judge, Parties and Counsel [Rule 68.4(a)]. You have ten days to tender a corrected petition for discretionary review.

## Documents

| *Lead Document* | PDR.pdf | [Original] |
|---|---|---|

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Jennifer Avendano<br>jennifer.avendano@co.cameron.tx.us | Cameron County District Attorney's Office | EServe | Sent | Yes | 06/23/2015 02:28:05 PM |
| Jennifer M. Avendano<br>jennifer.avendano@co.cameron.tx.us | Cameron County District Attorney's Office | EServe | Sent | Yes | 06/23/2015 02:27:27 PM |
| Jennifer Avendano<br>Jennifer.Avendano@co.cameron.tx.us | Cameron County District Attorney | EServe | Sent | Yes | 06/23/2015 02:26:54 PM |
| Lisa McMinn<br>information@spa.texas.gov | State Prosecuting Attorney | EServe | Sent | Yes | Not Opened |
| Lisa C. McMinn<br>lisa.mcminn@spa.texas.gov | State Prosecuting Attorney's Office | EServe | Sent | Yes | Not Opened |
| Lisa C. McMinn<br>information@spa.texas.gov | Office of the State Prosecuting Attorney | EServe | Sent | Yes | Not Opened |
| Lisa C. McMinn<br>information@spa.texas.gov | State Prosecuting Attorney | EServe | Sent | Yes | 06/23/2015 02:30:19 PM |
| Lisa McMinn<br>Lisa.McMinn@spa.texas.gov | State Prosecuting Attorney | EServe | Sent | Yes | Not Opened |